OPINION
{¶ 1} Appellant, Craig A. Clinton, appeals from the May 11, 2006 judgment entry of the Ashtabula Municipal Court, in which he was sentenced for criminal mischief.
 {¶ 2} On July 13, 2004, appellee, the state of Ohio, filed a complaint against appellant charging him with two counts of assault, misdemeanors of the first degree, in violation of R.C. 2903.13(A), and one count of criminal mischief, a misdemeanor of the first degree, in violation of R.C. 2909.07(A). Appellant pleaded not guilty at his initial appearance on July 22, 2004. *Page 2 
 {¶ 3} A jury trial commenced on March 3, 2006.
 {¶ 4} At the trial, the evidence revealed that on July 11, 2004, two separate groups of friends went to the Locker Room, a bar located in Ashtabula. Jillian DeMarco ("DeMarco") and her date, Jason Strong, as well as Lisa Newsome and her husband, Matthew Newsome, all arrived together. Also, appellant, William Robinson ("Robinson"), and Robinson's girlfriend, went to the Locker Room. DeMarco testified for appellee that she and appellant had an intimate relationship for a number of years.
 {¶ 5} At some point during the evening, appellant approached DeMarco and asked her to step outside with him so they could talk privately. As she got off her bar stool, appellant pushed her, causing her to stumble and her drink to spill. Lisa Newsome followed them outside, and testified for appellee that an argument ensued between appellant and DeMarco. Lisa Newsome indicated that appellant pushed her. Matthew Newsome and a bouncer came outside, at which time the encounter ceased. Everyone reentered the Locker Room and stayed until closing.
 {¶ 6} DeMarco and her friends stated that at some point, they no longer observed appellant, but did see Robinson and his girlfriend. They also observed that appellant's vehicle, which had been driven by Robinson that evening, was not in its original parking space. Sometime later, DeMarco and her friends noticed appellant back in the bar. After 2:00 a.m., they left the Locker Room and returned to DeMarco's residence.
 {¶ 7} DeMarco and her friends found her prized sports car, which was parked inside her unlocked garage, doused in gasoline. She immediately suspected appellant as the perpetrator. The police arrived and DeMarco relayed what had happened earlier *Page 3 
that evening. Sometime after 3:00 a.m., several officers went to appellant's residence. Robinson, who was present, told them that appellant was in the shower. The police discovered a gas can in appellant's vehicle. Officer Sherri Allen ("Officer Allen"), who testified for appellee, indicated on cross-examination that appellant said he carried the gas can around in case he needed spare gas.
 {¶ 8} Following the trial, the jury returned not guilty verdicts on the two assault charges, but found appellant guilty on the criminal mischief charge.
 {¶ 9} Pursuant to its May 11, 2006 judgment entry, the trial court sentenced appellant to one hundred eighty days in jail, one hundred thirty-five days conditionally suspended; ordered him to pay a fine in the amount of $1,000, $500 conditionally suspended; and ordered him to pay restitution in the amount of $7,051.[1] It is from that judgment that appellant filed a timely notice of appeal and makes the following assignments of error:
 {¶ 10} "[1.] Appellant's conviction is against the manifest weight of the evidence.
 {¶ 11} "[2.] Appellant was denied effective assistance of counsel where his trial attorney lead [sic] him to testify concerning other uncharged crimes."
 {¶ 12} In his first assignment of error, appellant argues that his conviction is against the manifest weight of the evidence. He presents five issues for our review. In his first issue, he asserts that the police failed to collect certain probative evidence that was readily available to them during the investigation. In his second issue, appellant maintains that the testimony from the police officers regarding the fact that he was showering is unreliable. Appellant contends in his third issue that appellee's witnesses *Page 4 
were not credible as to his alleged motive. In his fourth issue, appellant stresses that DeMarco's testimony regarding his apology is not believable. Finally, in his fifth issue, appellant alleges that he presented credible alibi evidence.
 {¶ 13} As this court stated in State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 13-15:
 {¶ 14} "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented.
 {¶ 15} "* * *
 {¶ 16} "* * * `[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 {¶ 17} "`In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record,weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)"` (Citations omitted.) * * *" (Emphasis sic.)
 {¶ 18} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "`only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v.Thompkins (1997), 78 Ohio St.3d 380, 387. (Citation omitted.) *Page 5 
 {¶ 19} With respect to his first issue, the police department allocated its resources and collected probative evidence that it sought fit. Here, the jury did not find appellant guilty of the two assault counts. However, the jury determined that the evidence presented was credible to sustain a conviction of criminal mischief. It is improper for this court to second-guess that determination, absent some clear error, which appellant fails to show. Based on the record before us, we do not agree with appellant that the investigation was hasty and incomplete.
 {¶ 20} Appellant's first issue is without merit.
 {¶ 21} Appellant's second, third, fourth, and fifth issues are interrelated since they deal with witness testimony and credibility. Thus, we will address them together.
 {¶ 22} The testimony at trial with respect to appellant showering is not unreliable. Officer Allen's limited recollection of the specific names of DeMarco's friends does not change the fact of what was alleged to have occurred. Officer Adam Simons ("Officer Simons"), another officer at appellant's residence, testified for appellee that he was told by Robinson that appellant was in the shower. The fact that Officer Simons did not personally observe appellant showering or did not see something specific which would indicate that appellant had just showered, does not make the testimony that appellant was in the shower unreliable.
 {¶ 23} We note that the jury is in the best position to assess the credibility of witnesses. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Here, the jury chose to believe appellee's witnesses rather than appellant with respect to the criminal mischief charge. Whether or not the jury found appellant's story believable is entirely within its discretion. *Page 6 
 {¶ 24} Appellee could not put on direct evidence that appellant was actually seen dousing gasoline on DeMarco's car parked inside her unlocked garage. However, the law does not require such a high standard of proof. State v. Williams, 7th Dist. No. 04 MA 38, 2005-Ohio-4762, at ¶ 23. "If that were so, convictions for crimes without eyewitnesses would never be upheld." Id. Thus, the Supreme Court of Ohio held inState v. Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus: "[circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof."
 {¶ 25} Appellant's second, third, fourth, and fifth issues are not well-taken.
 {¶ 26} Pursuant to Schlee and Thompkins, supra, and based on the evidence presented, we cannot say that the jury clearly lost its way in finding appellant guilty of criminal mischief.
 {¶ 27} Appellant's first assignment of error is without merit.
 {¶ 28} In his second assignment of error, appellant contends that he was denied effective assistance of trial counsel because his attorney led him to testify concerning other charged crimes.
 {¶ 29} Strickland v. Washington (1984), 466 U.S. 668, 687 states:
 {¶ 30} "[a] convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that *Page 7 
counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable."
 {¶ 31} "* * * When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-688. State v. Bradley (1989),42 Ohio St.3d 136, 142, quoting Strickland, supra, at 694, states: "[t]o warrant reversal, `(t)he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"
 {¶ 32} This court stated in State v. Rudge (Dec. 20, 1996), 11th Dist. No. 95-P-0055, 1996 Ohio App. LEXIS 5807, at 35-36, that: "`[strategic and tactical decisions will not form the basis of a claim of ineffective assistance of counsel, even if there had been a better strategy available to him. (* * *)' * * * `"Errors of judgment regarding tactical matters do not substantiate a claim of ineffective assistance of counsel." * * *.' State v. Lundgren (Apr. 22, 1994), [11th Dist. No. 90-L-15-125, 1994 Ohio App. LEXIS 1722], at 40-41." (Citations omitted.)
 {¶ 33} In the case sub judice, the city solicitor asked appellant on cross-examination whether he had ever been accused of anything before or if he had been involved in the process. Appellant replied that he had been accused of things before. The city solicitor asked appellant what he was accused of. Appellant's counsel *Page 8 
objected. An off the record discussion was held at the bench, and the court recessed for the day. It is not evident from the record whether the trial court sustained the objection. However, the city solicitor did not seek an answer to that particular question the following day.
 {¶ 34} On re-direct examination, appellant's counsel asked appellant if he had ever been charged with any crimes. Appellant replied in the affirmative. Counsel for appellant inquired as to when he was charged with those crimes. Appellant replied that he was charged with a couple different things in the early 1970s.
 {¶ 35} On re-cross examination, the city solicitor asked appellant how many counts of aggravated robbery, felonious assault, grand larceny, and aggravated burglary he had been charged with. Appellant replied that he was charged with one count of aggravated robbery, but could not recall if he was ever charged with felonious assault, grand larceny, or aggravated burglary. The city solicitor also asked appellant if he had ever been charged with any drug crimes. Appellant's counsel objected, which was overruled by the trial court.
 {¶ 36} During the city solicitor's cross-examination, appellant opened the door by stating that he had been accused of things before. Based on his response, it is probable that the jury concluded that he had been previously accused or charged with a crime or crimes. The line of questioning by appellant's counsel was used as a tactical decision to clarify and nullify what appellant himself chose to raise. Appellant's error cannot be attributed to his counsel.
 {¶ 37} Pursuant to Strickland, supra, appellant fails to show that his counsel's performance was deficient and that the deficient performance prejudiced the defense. *Page 9 
Even assuming arguendo that appellant's counsel's performance was deficient, appellant cannot show that the deficient performance prejudiced the defense. Thus, he cannot show that but for his counsel's unprofessional errors, the result of the proceeding would have been different.
 {¶ 38} Appellant's second assignment of error is without merit.
 {¶ 39} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Ashtabula Municipal Court is affirmed.
DIANE V. GRENDELL, J., concurs,
[1] On October 6, 2006, appellant filed a motion to stay his sentence. This court overruled appellant's motion on November 14, 2006.