[Cite as *State v. Lowry*, 2020-Ohio-1554.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NOS. CA2019-07-070 |
| | | CA2019-07-071 |
| Appellee, | : | |
| | : | O P I N I O N |
| - vs - | | 4/20/2020 |
| | : | |
| JEFFREY W. LOWRY, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM WARREN COUNTY COURT
Case Nos. 2018CRB000799 and 2018CRB000869


David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Kevin D. Hughes, 20 South Main Street, Springboro, Ohio 45066, for appellant


**M. POWELL, J.**

{¶ 1} Appellant, Jeffrey Lowry, appeals his conviction in the Warren County Court for criminal mischief and littering.

{¶ 2} Appellant and Brenda Wilcox are neighbors with abutting backyards separated by appellant's wooden fence. Sometime between June and early September 2018, Wilcox planted nine Arborvitae trees along the fence, two to three feet away from the

fence.

{¶ 3} In June 2018, appellant and Wilcox's son engaged in a heated verbal altercation over a drainage pipe located on Wilcox's property. Appellant believed the pipe was draining into his yard, flooding his property and damaging his deck. During the altercation, appellant allegedly threatened to get a gun. Police were called, ending the confrontation. Later that night, Wilcox found a note from appellant stuck in her front door. The note threatened to file a $150,000 lawsuit against Wilcox over the drainage issue. Subsequently, appellant and Wilcox's son exchanged text messages over several weeks but were unable to resolve the issue. There was no interaction between appellant and Wilcox's son between early July and September 2018.

{¶ 4} On September 12, 2018, against this backdrop, Wilcox called the police after smelling an odor of gasoline or kerosene in her backyard. Wilcox discovered that the source of the odor was a dark oily substance spread over the ground around her newly planted trees. The substance was found at the base of the trees and on their bottom leaves and was spread in the area between the trees and appellant's fence. Wilcox explained that it appeared as if "somebody poured something" on the trees. Photographs were taken of a spray pattern starting in appellant's yard and ending at the base of the trees. The area of the fence adjacent to where the spray pattern began was broken. A bottle of lighter fluid was observed sitting on appellant's back deck. As a result of their exposure to the substance, the trees had to be removed and replaced at a cost of $2,501.41.

{¶ 5} Wilcox further discovered two piles of ashes on her property next to the fence. The piles were about one foot in diameter. The ashes looked like fireplace ashes. The ash piles appeared as though they had been dumped as opposed to having been dispersed by the wind. One of the piles had debris, including matches and an empty pack of Marlboro

Lights cigarettes. Neither Wilcox nor her husband smoked; however, appellant smoked. Prior to September 12, 2018, Wilcox had observed Marlboro Lights cigarette packs in appellant's yard and had seen appellant flick Marlboro Lights cigarette butts into her yard. Furthermore, appellant had a firepit in his backyard.

{¶ 6} Appellant was charged with criminal mischief and littering. The matter proceeded to a bench trial. Wilcox, her son, and responding Clearcreek Township Police Officer Nicole Cordero testified on behalf of the state. Appellant testified on his own behalf.

{¶ 7} Wilcox and her son both testified that appellant did not have permission to be on or do anything to Wilcox's property. Wilcox recounted a conversation during which appellant let her know he had "watered [the trees] all night." Wilcox acknowledged she had not witnessed appellant spray the dark oily substance on her property or deposit the piles of ashes. Although she was not sure, Wilcox believed appellant smoked Marlboro Lights cigarettes.

{¶ 8} Wilcox's son testified that the substance spread around the trees smelled like gasoline. He further testified that following the discovery of the oily substance and piles of ashes on Wilcox's property, he took several photographs on September 12, 2018. One of the photographs was of the broken fence adjacent to where the spray pattern began. Wilcox's son testified that this part of the fence was not broken prior to September 12, 2018.

{¶ 9} Officer Cordero testified she observed two piles of ashes along the fence line as well as a dark substance sprayed around the ball and on the leaves of the newly planted trees. Furthermore, she could smell an oily gasoline odor around the trees. Officer Cordero testified that no soil analysis was performed. Upon leaving Wilcox's home, Officer Cordero went to appellant's home; however, he was at work. When appellant later called the officer and learned the reason of her visit to his home, he became irate and told the officer she

needed a warrant to speak with him. Approximately an hour later, Officer Cordero attempted to talk to appellant at his home. However, appellant was irate and yelling, refused to talk to the officer, and told her to get off his property. Officer Cordero testified appellant called her a week later to apologize, explaining he did not want her at his home because he had a newborn.

{¶ 10} Appellant testified that he had a firepit in his backyard, that he uses lighter fluid to start fires, and that he typically burns wood two nights a week during the warm season and every night in the winter. Upon being shown the photograph of the broken fence, appellant denied it depicted the condition of the fence on September 12, 2018; rather, it depicted its condition "probably a month afterwards * * * something like that." Appellant denied dumping ashes, lighter fluid, or anything else on Wilcox's property and further denied entering her property without permission. Appellant denied smoking Marlboro Lights cigarettes, testified he only smokes Marlboro Reds cigarettes, and surmised some of his smoking friends might have thrown Marlboro Lights cigarette packs into his firepit. Appellant denied yelling at Officer Cordero but admitted he raised his voice while talking to her. Appellant further admitted calling the Clearcreek Township Police Department after the officer left his home to complain about her.

{¶ 11} At the close of the evidence, the trial court found appellant guilty as charged. He was subsequently sentenced to probation and ordered to pay Wilcox $2,063.56 in restitution.

{¶ 12} Appellant now appeals, raising one assignment of error:

{¶ 13} THE TRIAL COURT ERRED AS THE FINDING FOR CRIMINAL MISCHIEF AND LITTERING GOES AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 14} Appellant argues that his conviction for criminal mischief is against the

manifest weight of the evidence because there is no evidence he was on Wilcox's property or that he sprayed anything on the trees. Appellant emphasizes the fact that no one observed him spray lighter fluid or another chemical on the trees, no one observed him use his firepit, and the substance found around the trees was never identified. Appellant further argues that his conviction for littering is against the manifest weight of the evidence because there is no evidence tying him to the ashes and the Marlboro Lights cigarette pack found on Wilcox's property, especially given the fact he does not smoke Marlboro Lights cigarettes. Appellant asserts "it is a logical and reasonable possibility that the wind simply blew some ashes into [Wilcox's] backyard and that they were not placed in the backyard by [appellant]."

{¶ 15} When considering whether a judgment is against the manifest weight of the evidence in a bench trial, an appellate court will not reverse a conviction where the trial court could reasonably conclude from substantial evidence that the state has proven the offense beyond a reasonable doubt. *State v. Eskridge*, 38 Ohio St.3d 56, 59 (1988); *State v. Cooper*, 12th Dist. Butler No. CA2010-05-113, 2011-Ohio-1630, ¶ 7. In conducting its review, an appellate court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the trial court "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Cooper* at ¶ 7. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52; *State v. Kash*, 12th Dist. Butler No. CA2002-10-247, 2004-Ohio-415, ¶ 12.

{¶ 16} Appellant was convicted of criminal mischief in violation of R.C.

2909.07(A)(1)(a), which prohibits anyone, without privilege to do so, from knowingly moving, defacing, damaging, destroying, or otherwise improperly tampering with the property of another.

{¶ 17} After carefully reviewing the record, we find that the trial court did not lose its way and create a miscarriage of justice in convicting appellant of criminal mischief. Given appellant's animosity toward Wilcox and her son, his testimony he uses his firepit year-round, his possession of lighter fluid, the testimony of all three state witnesses that a gasoline-like odor emanated from the substance spread around the trees, the spray pattern originating in appellant's yard and ending at the base of the trees, and the broken fence adjacent to where the spray pattern began, we find that the trial court could reasonably conclude that appellant knowingly defaced, damaged, or otherwise improperly tampered with Wilcox's trees by putting the dark oily substance on the trees.

{¶ 18} Appellant argues there is no direct evidence he was seen spraying lighter fluid or another chemical on the trees. "However, the law does not require such a high standard of proof." *State v. Clinton*, 11th Dist. Ashtabula No. 2006-A-0024, 2007-Ohio-2169, ¶ 24, citing *State v. Williams*, 7th Dist. Mahoning No. 04 MA 38, 2005-Ohio-4762, ¶ 23. "If that were so, convictions for crimes without eyewitnesses would never be upheld." *Clinton* at ¶ 24. It is for this reason that the Supreme Court of Ohio has held that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value. In some instances certain facts can only be established by circumstantial evidence." *State v. Jenks*, 61 Ohio St.3d 259, 272 (1991). A conviction based on circumstantial evidence is no less sound that one based on direct evidence. *State v. Mobus*, 12th Dist. Butler No. CA2005-01-004, 2005-Ohio-6164, ¶ 51.

{¶ 19} In a bench trial, the trial court acts as the factfinder and determines both the

credibility of the witnesses and the weight of the evidence. *Cooper*, 2011-Ohio-1630 at ¶ 7; *State v. Carrozza*, 12th Dist. Preble No. CA97-11-029, 1998 Ohio App. LEXIS 5546, *3 (Nov. 23, 1998). The trial court was entitled to determine what weight to give the testimony of the witnesses before it. In finding appellant guilty of criminal mischief, the trial court was free to discredit appellant's testimony that he did not enter Wilcox's property, that he did not spray lighter fluid or another chemical on Wilcox's trees, and that the fence was broken several weeks after September 12, 2018. "[A] conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17.

{¶ 20} Appellant was further convicted of littering in violation of R.C. 3767.32, which prohibits anyone, regardless of intent, from depositing litter or causing litter to be deposited on private property not owned by the person. R.C. 3767.32(D)(1) defines "litter" as "garbage, trash, waste, rubbish, ashes, cans, bottles, wire, paper, cartons, boxes, automobile parts, furniture, glass, or anything else of an unsightly or unsanitary nature." R.C. 3767.32(D)(2) defines "deposit" as "to throw, drop, discard, or place."

{¶ 21} After carefully reviewing the record, we find that the trial court did not lose its way and create a miscarriage of justice in convicting appellant of littering. Given appellant's animosity toward Wilcox and her son, his testimony he uses his firepit year-round, the fact the ashes were found in piles and not in a dispersed manner as though blown by the wind, and the fact he smokes cigarettes, the trial court could reasonably conclude that appellant deposited the piles of ashes and debris onto Wilcox's property. Appellant's littering conviction is not less sound because it is based only on circumstantial evidence.

{¶ 22} Furthermore, the trial court was entitled to determine what weight to give to the parties' conflicting testimony regarding the type of Marlboro cigarettes appellant

smokes. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *Lunsford*, 2011-Ohio-6529 at ¶ 17. In finding appellant guilty of littering, the court was free to discredit his testimony that he does not smoke Marlboro Lights cigarettes and that the Marlboro Lights cigarette pack found in one of the piles may have come from one of his friends.

{¶ 23} We therefore find that appellant's conviction for criminal mischief and littering are not against the manifest weight of the evidence. Appellant's assignment of error is overruled.

{¶ 24} Judgment affirmed.

HENDRICKSON, P.J., and RINGLAND, J., concur.