[Cite as *State v. Garlough*, 2022-Ohio-1276.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2021-06-051 |
| | : | O P I N I O N |
| - vs - | | 4/18/2022 |
| | : | |
| HARRY JAMES GARLOUGH, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 20CR36984

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Ostrowski Law Firm Co., L.P.A., and Andrea G. Ostrowski, for appellant.


**PIPER, J.**

{¶ 1} Appellant, Harry Garlough, appeals his conviction and sentence in the Warren County Court of Common Pleas for assault, abduction, and unlawful restraint. For the reasons discussed below, we affirm Garlough's convictions and sentence.

{¶ 2} Garlough was indicted for domestic violence, three counts of rape, three counts of felonious assault, and six counts of abduction. The majority of charges arose

from altercations with Garlough's wife, while two charges involved his stepdaughter. At trial, both Garlough and his wife testified, and each presented a different version of the events involving the charges.

{¶ 3} The couple met on the dating site, eharmony, and after a short period of dating, married in February 2017. Both had been married before; Garlough's previous wife died of cancer and his new wife was divorced from a sexually abusive husband. Garlough bought a house and moved to Lebanon after the marriage. His young daughter from his previous marriage lived with the couple. His wife's children from her previous marriage lived with the couple part of the time.

{¶ 4} According to the wife, shortly after the marriage, she discovered Garlough had a controlling nature. She testified that Garlough set rules that she had to obey, including making a hot breakfast for him, requiring her to be in bed at a certain time, and only allowing her to shower at certain times. The wife alleged that within a few weeks of the marriage, the couple began having physical altercations in which Garlough would hit and restrain her as she struggled to get away. She testified to incidents in which Garlough punched her in the face and broke a tooth and her jaw, punched her in the throat and chin, grabbed her around the neck and dragged her, punched her in the throat and chin and she could not breathe, dragged her from the kitchen to the bedroom and got on top of her and would not allow her to leave, grabbed her by the neck and pressed her against the wall, several instances in which he held her down and restrained her, and blocked her way and would not let her out of rooms.

{¶ 5} A final incident between the couple and the stepdaughter, who was home from college, occurred on June 18, 2018. The stepdaughter also testified at trial about this incident and her testimony was consistent with her mother's version of the events. The wife called 9-1-1 during this altercation, but Garlough left before police arrived. After a police

investigation, Garlough was charged, not only for the events of that night, but also for events that occurred throughout the marriage.

{¶ 6} The wife indicated that when they discussed his behavior, Garlough would promise to get see a doctor and get medication, or to talk to a counselor or a pastor, but would not follow through. She installed an application on her phone that would record when noise was present, and several recordings were played at trial. The wife testified regarding what was happening in relation to audio on the recordings. During the recordings, the wife made statements about Garlough's abusive behavior and previous instances of harm. Copies of text messages between the couple were also admitted at trial in which the two discussed the wife's injuries and that they were caused by Garlough. The wife also took photos of bruises and the broken tooth that were admitted at trial. She testified that she did not leave prior to the June 18 altercation for a number of reasons. One reason involved her job at a church which she feared she would lose if she divorced Garlough, leaving her without any income. In addition, she testified she was concerned for Garlough's young daughter and felt stuck in her situation.

{¶ 7} Garlough, however, testified to a different version of events. According to him, he discovered shortly after the marriage that playful touching "freaks out" his wife and that she overreacted even with tender touching and would scream "don't rape me" and claw and scratch his face. He testified that he has insomnia problems related to the death of his former wife and fears being alone and his wife was insensitive to this need. He explained the events on the recordings differently and stated that when his wife said "get off me" it did not mean he was on her, but that she did not want to be touched. He denied ever hitting, holding down, dragging or tackling his wife, as she had described. He further testified that he didn't deny the statements about abuse or injuries his wife made in the recordings and text messages because he was trying to keep the relationship together, so he did not deny

the "crazy things" she said because she would have become mad and left. Instead, he "played along" and agreed with her statements. He testified that they were working through issues, but his wife began acting strange after taking domestic violence classes online and began looking at their relationship differently.

{¶ 8} Following a bench trial, Garlough was found guilty of four counts of abduction, three counts of assault and one count of unlawful restraint. The trial court stated that it found the testimony of the wife and stepdaughter credible, but the evidence for some events did not meet the burden of proof required of the charges. The court's ultimate determination included a finding that Garlough was not guilty of some of the charged offenses, including the rape charges and the charges involving the stepdaughter, and also that Garlough was guilty of lesser included offenses to some of the charges. The court sentenced Garlough to an aggregate term of 60 months in prison.

{¶ 9} Garlough now appeals his conviction and sentence, raising three assignments of error for our review.

{¶ 10} THE EVIDENCE WAS INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTIONS, AND THE VERDICTS WERE CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 11} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio 52; *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational

trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 12} A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. "'While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26.

{¶ 13} An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*, citing *Thompkins*, 78 Ohio St.3d at 387. Furthermore, although the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 14} Garlough argues that the evidence was insufficient and against the manifest weight of the evidence because the audio recordings of the alleged incidents do not

corroborate the wife's testimony, do not reveal struggles or physical contact, the wife remains calm during the recordings and her voice "remains steady, fast and calm." Garlough contends that there are also periods of silence while the wife alleges a violent act is taking place and because the wife knew the couple was being recorded and "played to the audience" on the recordings.

{¶ 15} The decision whether to credit the testimony of a witness, and to what extent, is within the peculiar competence of the factfinder, who has seen and heard the witness. *State v. Goodwin*, 12th Dist. Butler No. CA2016-05-099, 2017-Ohio-2712, ¶ 34. "[I]t is well-established that determinations regarding witness credibility, conflicting testimony, and the weight to be given such evidence are primarily for the trier of fact." *State v. K.W.*, 12th Dist. Warren No. CA2016-01-004, 2016-Ohio-7365, ¶ 26.

{¶ 16} "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17. "In a bench trial, the trial court acts as the factfinder and determines both the credibility of the witnesses and the weight of the evidence." *State v. Lowry*, 12th Dist. Warren Nos. CA2019-07-070 and CA2019-07-071, 2020-Ohio-1554, ¶ 19. The court considers any inconsistencies in the witness' testimony and resolves them accordingly, believing all, part, or none of each witness's testimony. *State v. Enoch*, 12th Dist. Butler No. CA2019-07-117, 2020-Ohio-3406, ¶ 27.

{¶ 17} In this case, the trial court, as factfinder, determined that the wife was credible, as was the testimony of the stepdaughter. As mentioned above, both the wife and Garlough described what was happening during the audio recordings. Although Garlough argues the supporting evidence, including the audio recordings, did not support the wife's version of events, the court considered the evidence and was in the best position to weigh the

testimony, in consideration with other evidence, and resolve any conflicts.

{¶ 18} After reviewing the record, we find that in making its decision which witnesses to believe and which to disbelieve, the trial court did not lose its way or create a manifest miscarriage of justice. We find that Garlough's convictions for assault, abduction and unlawful restraint are not against the manifest weight of the evidence, and are therefore supported by sufficient evidence. Therefore, Garlough's first assignment of error is without merit and is overruled.

{¶ 19} THE TRIAL COURT ERRED WHEN IT IMPOSED CONSECUTIVE SENTENCES

{¶ 20} An appellate court reviews felony sentences pursuant to the standard of review set forth in R.C. 2953.08(G)(2) to determine whether the imposition of those sentences is clearly and convincingly contrary to law. *State v. Julious*, 12th Dist. Butler No. CA2015-12-224, 2016-Ohio-4822, ¶ 8. Pursuant to that statute, an appellate court may modify or vacate a sentence only if it determines by clear and convincing evidence, that "the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. A sentence is not clearly and convincingly contrary to law where the trial court considers the purposes and principles of sentencing as set forth in R.C. 2929.11, as well as the seriousness and recidivism factors listed in R.C. 2929.12, and sentences a defendant within the permissible statutory range. *State v. Brandenburg*, 12th Dist. Butler Nos. CA2014-10-201 and CA2014-10-202, 2016-Ohio-4918, ¶ 9.

{¶ 21} Pursuant to R.C. 2929.14(C)(4), a trial court must engage in a three-step analysis and make certain findings before imposing consecutive sentences. *State v. Dillon*, 12th Dist. Madison No. CA2012-06-012, 2013-Ohio-335, ¶ 9. First, the trial court must find that the consecutive sentence is necessary to protect the public from future crime or to

punish the offender. *Id.*, citing R.C. 2929.14(C)(4). Second, the trial court must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. *Id.* Third, the trial court must find that one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

**{¶ 22}** "A trial court satisfies the statutory requirement of making the required findings when the record reflects that the court engaged in the required analysis and selected the appropriate statutory criteria." *State v. Setty*, 12th Dist. Clermont Nos. CA2013-06-049 and CA2013-06-050, 2014-Ohio-2340, ¶ 113. In imposing consecutive sentences, the trial court is not required to provide a word-for-word recitation of the language of the statute or articulate reasons supporting its findings. *Id.* However, the record must reflect that the trial court engaged in the required sentencing analysis and made the requisite findings. *Id.* The court's findings must thereafter be incorporated into its sentencing entry. *State v. Ahlers*, 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 10.

**{¶ 23}** Garlough concedes that the necessary findings under R.C. 2929.14(C)(4) were made at his sentencing hearing and that the findings were included in his sentencing

entry. However, he argues that the court's findings were made after initially imposing concurrent sentences and were "routine and verbatim" which belies the actual justification for consecutive sentences.

{¶ 24} At sentencing, the trial court initially stated that it had considered the issues involving consecutive and concurrent sentences and stated that if it could adequately punish Garlough with one prison term for one count, there was no need for consecutive sentences. The court then imposed 60-month concurrent terms on the abduction charges and ran all of the sentences concurrently. The prosecution and the defense then indicated that they believed the highest term of imprisonment for abduction, a third-degree felony, was 36 months. The prosecutor looked up the statute and noted that the abduction convictions in this case did not fall under any of the circumstances in which a prison sentence greater than 36 months was authorized for a third-degree felony.[1]

{¶ 25} The court indicated that when considering the sentence to be imposed, it had a sentence in mind, and when it looked at the presentence investigation, the report said a 60-month sentence was possible, so it had followed that information. The court then imposed 30-month sentences on each of the abduction convictions, running counts three and six concurrent and counts eight and nine concurrent, but consecutive to counts three and six, for an aggregate sentence of 60 months. The court made findings that consecutive sentences were necessary to protect the public and punish the offender and were not disproportionate to the conduct and danger posed. The court continued, stating that it had listened to the evidence and found the conduct egregious, that it was part of a course of conduct, and the harm caused was such that a single term of 36 months would not

---

1. *See* R.C. 2929.14(A)(3)(a) and 2925.041(C)(1).

adequately reflect the seriousness of the conduct in this case.

{¶ 26} We find no error in the trial court's decision to sentence Garlough to consecutive sentences. Contrary to Garlough's argument, the court did provide an adequate rationale for the sentence it ultimately imposed. The trial court initially thought it could impose concurrent 60-month terms, which if felt would adequately meet the purposes and principles of sentencing. When the court discovered that sentence was not an option, and 36-month terms were the maximum for each offense, the court reconsidered what type of punishment would adequately punish the offender and protect the public, and specifically determined that 36-month concurrent sentences would not do so.

{¶ 27} The court then imposed 30-month sentences, with two terms running consecutively to the other two terms, making the required findings and determining that these sentences met the purposes and principles of sentencing by running consecutively. Appellant's second assignment of error is therefore overruled.

{¶ 28} THE TRIAL COURT ERRED WHEN IT IMPOSED PRISON TIME AND DID NOT GIVE APPELLANT AN OPPORTUNITY ON COMMUNITY CONTROL

{¶ 29} Garlough was sentenced to prison after he was found guilty of four third-degree felonies. Generally, third-degree felonies carry no presumption for either prison or community control. R.C. 2929.13(C); *State v. Back*, 12th Dist. Butler Nos. CA2015-03-037 and CA2015-03-038, 2015-Ohio-4447, ¶ 19. A prison term can be imposed for a felony of the third degree if the court finds that it is appropriate after considering the "purposes and principles of sentencing under section 2929.11 of the Revised Code and with section 2929.12 of the Revised Code." R.C. 2929.13(C).

{¶ 30} Garlough argues that the trial court erred in sentencing him to prison, rather than community control because, he had no criminal history, turned himself into police, did not have any bond issues, and a mental health assessment gave treatment

recommendations. As mentioned above, the standard of review set forth in R.C. 2953.08(G)(2) governs felony sentences. *State v. Watkins*, 12th Dist. Preble No. CA2020-03-005, 2021-Ohio-163, ¶ 48.

{¶ 31} "A sentence is not clearly and convincingly contrary to law where the trial court 'considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range.'" *State v. Tillett*, 12th Dist. Butler No. CA2019-11-192, 2020-Ohio-3836, ¶ 10, quoting *State v. Ahlers*, 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 8.

{¶ 32} We conclude that the trial court did not err when it sentenced Garlough to prison rather than community control. In determining prison was appropriate, the court explicitly stated that it had considered the purposes and principles of sentencing and determined that Garlough was not amenable to community control. The court stated that community control would not adequately punish Garlough and would seriously demean what happened in the case.

{¶ 33} The trial court's sentencing complies with applicable rules and sentencing statutes. While Garlough may disagree with the weight given to the sentencing factors by the trial judge, the sentence was within the applicable statutory range and is not contrary to law. Accordingly, the third assignment of error is overruled.

{¶ 34} Judgment affirmed.

M. POWELL, P.J., and HENDRICKSON, J., concur.