[Cite as *State v. Wilson*, 2022-Ohio-1985.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NOS. CA2021-12-027 |
| | | CA2021-12-028 |
| | : | |
| - vs - | | O P I N I O N |
| | : | 6/13/2022 |
| JUSTIN M. WILSON, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CRI 20210163

Jess C. Weade, Fayette County Prosecuting Attorney, and Rachel S. Martin, Assistant Prosecuting Attorney, for appellee.

Steven H. Eckstein, for appellant.


**HENDRICKSON, J.**

{¶ 1}   Appellant, Justin M. Wilson, appeals from his conviction in the Fayette County Court of Common Pleas for aggravated trafficking in drugs.  For the reasons discussed below, we affirm his conviction.

{¶ 2}   On February 8, 2021, Tyler Jones, a confidential informant working with officers from the Fayette County Sheriff's Office, conducted a controlled buy of

methamphetamine from appellant at appellant's home in Fayette County, Ohio. Appellant was subsequently arrested and indicted on one count of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1) and (C)(1)(d), a felony of the first degree as the indictment specified that the amount of methamphetamine involved was five times the bulk amount but less than 50 times the bulk amount and that the offense took place in the vicinity of a juvenile.

{¶ 3} Appellant pled not guilty to the charge and a jury trial commenced on November 16, 2021. The state presented testimony from Jones, Detective Treg Brown, Detective Charles Kyle, and Sergeant Jon Fausnaugh and entered into evidence recorded jail phone calls from appellant, a recorded conversation between appellant and Jones setting up the drug buy, a video and audio recording of Jones' purchase of methamphetamine from appellant on February 8, 2021, and an Ohio Bureau of Criminal Investigation ("BCI") laboratory report based upon an analysis of the controlled substance Jones purchased. Appellant did not present any witnesses or exhibits. The testimony at trial established the following facts.

{¶ 4} On February 8, 2021, Jones met with Detectives Brown and Kyle in an unmarked vehicle. While in the detectives' presence, Jones placed a phone call to appellant using Facebook messenger. The detectives, who were familiar with appellant and his voice, testified they recognized appellant as the individual on the call with Jones. During the phone call, Jones arranged to purchase a "zipper" or an ounce of methamphetamine from appellant for $450. The sale was to take place at appellant's residence on Broadway Street in Washington Court House.

{¶ 5} Detectives Kyle and Brown drove Jones to an area near appellant's residence. Detective Brown searched Jones and found nothing in his possession. The detective then

- 2 -

provided Jones with $450 in cash and a recording device. The recording device allowed the detectives to see and listen in on the controlled buy. Jones exited the unmarked vehicle and walked to appellant's home.

**{¶ 6}** Once inside appellant's residence, appellant informed Jones that he did not have a full ounce of methamphetamine to sell. Because he was short the full ounce, appellant changed the sale price from $450 to $400. Jones testified he purchased the methamphetamine from appellant for $400 before exiting the home and returning to the detectives' unmarked vehicle. At trial, Jones initially testified that there was not a child present in the home when he purchased the drugs from appellant. However, after his memory was refreshed by watching and listening to the recording of the controlled buy, which showed a child walking across the screen and yelling in the background, Jones testified a child was present. Jones did not know who the child was, the child's age, or the child's name.

**{¶ 7}** Upon returning to the detectives' vehicle, Jones provided the detectives with the drugs, the recording device, and the $50 that he had not used to purchase the drugs. Jones was searched again by Detective Brown and nothing was found on his person. The baggie of suspected methamphetamine was secured into evidence and later tested by BCI. Testing revealed that the substance was methamphetamine and that it weighed 24.42 grams.

**{¶ 8}** On cross-examination, Jones testified that he started working as a confidential informant with the sheriff's office approximately three years ago. He was paid $200 for acting as a confidential informant in appellant's case. He admitted to having two felony convictions – one for nonsupport of dependents and one for failure to appear.

**{¶ 9}** Detectives Brown and Kyle testified that in addition to listening to the

controlled buy when it occurred live, they also watched the recording of the buy. Though the recording device did not always maintain a visual of the events that were happening inside appellant's home, at times recording the floor or the table the device was sitting on, the audio transmission worked properly the whole time. The detectives recognized appellant's voice over the audio transmission. Additionally, the top portion of appellant's face was visible on the recording and the detectives indicated they were able to recognize appellant based on the distinct tattoos he had on his face. The detectives also heard and saw a child on the recording. The child appeared on the recording shortly after the drug transaction had taken place between appellant and Jones.

{¶ 10} Detective Brown testified that appellant was not arrested until approximately a month after the controlled buy occurred, as the detectives had continued their investigation. When appellant was arrested, the detectives did not recover the specific monetary bills Jones used to purchase the methamphetamine. However, Detective Brown explained that this was not unusual, given the time between the drug buy and appellant's arrest.

{¶ 11} Detective Kyle testified about recorded phone calls appellant made while in jail awaiting trial. In a video call, appellant discussed the evidence the state had in the case, stating, "They ain't got shit. All you hear is some voices." Appellant then stated, "If I don't say nothing in court, they can't compare my voice." He also discussed his intent to wear his hair down to cover his facial tattoos during court. In another phone call, which occurred the evening before trial, appellant discussed the phone call he had with Jones over Facebook Messenger. Though appellant claimed it was not him on the messenger call, he later stated, "I had someone go back to that time and date * * * on Facebook Messenger, Tyler Jones is the one that hit me up."

{¶ 12} After being presented with the foregoing evidence, the jury found appellant guilty of aggravated trafficking in drugs. The jury further found that the amount of methamphetamine involved was greater than five times the bulk amount but less than 50 times the bulk amount and that the offense was committed within the vicinity of a juvenile. Appellant was sentenced to an indefinite sentence with a mandatory minimum prison term of 10 years and a maximum prison term of 15 years.

{¶ 13} Appellant appealed his conviction, raising two assignments of error. For ease of discussion, we address the assignments of error together.

{¶ 14} Assignment of Error No. 1:

{¶ 15} THE TRIAL COURT ERRED WHEN IT ENTERED A JUDGMENT AGAINST THE APPELLANT WHICH WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶ 16} Assignment of Error No. 2:

{¶ 17} THE TRIAL COURT ERRED WHEN IT ENTERED A JUDGMENT AGAINST APPELLANT WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 18} In his first and second assignments of error, appellant argues his conviction for aggravated trafficking in drugs is not supported by sufficient evidence and is against the manifest weight of the evidence. Specifically, appellant challenges whether the state proved that he sold the methamphetamine to the confidential informant as the video recording of the buy "fail[ed] to tape vital aspects of any drug transaction." He further challenges the credibility of the confidential informant, arguing that Jones' "failure to tape vital aspects of any drug transaction, his felony convictions, and [his] being paid for the transactions by law enforcement, show he was lying."

{¶ 19} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*,

194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 20} On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. In reviewing the evidence, an appellate court must be mindful that the jury, as the original trier of fact, was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 114 (12th Dist.). An appellate court will overturn a conviction due to the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Further, although the legal concepts of sufficiency of the evidence and weight of

the evidence are quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 21} Appellant was convicted of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1), which provides that "[n]o person shall knowingly * * * [s]ell or offer to sell a controlled substance or controlled substance analog." "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). For the offense to constitute a first-degree felony, the state had to prove that the amount of the drug involved was equal to or greater than five times the bulk amount but less than 50 times the bulk amount and that the offense was conducted in the vicinity of a juvenile. R.C. 2925.03(C)(1)(d). Methamphetamine is a schedule II substance and the bulk amount of a schedule II substance is three grams. R.C. 2925.01(D)(1)(g).

{¶ 22} After reviewing the record, weighing inferences and examining the credibility of the witnesses, we find appellant's conviction for aggravated trafficking in drugs is not against the manifest weight of the evidence and is supported by sufficient evidence. The state presented testimony and evidence from which the jury could have found all the essential elements of the offense proven beyond a reasonable doubt. Through Jones' testimony, the recorded Facebook Messenger call arranging the buy, and the recording of the controlled buy, the state presented evidence that appellant not only offered to sell methamphetamine to Jones, but that he did sell the controlled substance to Jones on February 8, 2021. During the Facebook Messenger call, appellant agreed to sell a "zipper" or full ounce of methamphetamine to Jones in exchange for $450. However, as Jones'

testimony and the recording of the controlled buy demonstrate, appellant was short the full ounce that he had agreed to sell. Appellant is heard on the recording lowering the sale price to $400. Jones exchanged $400 for the methamphetamine, completing the drug transaction. The fact that the recording does not capture a visual of the drugs and money exchanging hands is immaterial. The transaction can be heard on the recording and Jones testified to it occurring at trial. Jones also testified the sale occurred while a child was present in the home, and the recording picked up a child's voice and showed a child in the residence at the time the drug transaction was completed, thereby proving the sale occurred in the vicinity of a juvenile.

{¶ 23} Detectives Brown and Kyle, who were familiar with appellant from prior dealings, testified they recognized appellant's voice and his face from the audio and visual recording of the controlled buy. After meeting with Jones immediately after the buy occurred to secure the drugs into evidence, the detectives later sent the drugs to BCI for testing. The drugs were weighed and analyzed and found to be 24.42 grams of methamphetamine, which was more than five times the bulk amount but less than 50 times the bulk amount for methamphetamine.

{¶ 24} Appellant's recorded phone calls while in jail provided additional evidence of his involvement in the sale of methamphetamine to Jones. Appellant discusses the fact Jones "hit [him] up" over Facebook Messenger. Appellant also discusses his intent to try to cover up his involvement by not speaking so the jury cannot compare his voice to the recording where the sale was set up or to the recording of the controlled buy. Appellant also indicates his intent to wear his hair down while in court in an attempt to cover his facial tattoos, which are visible on the recording of the controlled buy.

{¶ 25} Despite the overwhelming evidence the state presented demonstrating

appellant sold methamphetamine to Jones on February 8, 2021, appellant maintains his conviction is against the weight of the evidence. Appellant challenges the credibility of Jones' testimony, given that Jones was paid $200 for his role as a confidential informant and Jones had prior felony convictions for nonsupport and failure to appear. However, the evidence introduced at trial shows that Jones was searched for contraband both prior to and immediately after the controlled buy. Jones was also monitored by law enforcement both when arranging to buy the methamphetamine and when purchasing the drugs from appellant. As Jones had been searched by law enforcement and had been observed and monitored throughout the operation, there was no reason to believe that the methamphetamine Jones turned over to Detectives Brown and Kyle had not come from his transaction with appellant. Jones, Detective Brown, and Detective Kyle all identified appellant as the individual who offered to sell and who did sell the controlled substance to Jones. The guilty verdict indicates the jury found Jones' and the detectives' testimony credible.

{¶ 26} Accordingly, for the reasons set forth above, we find that appellant's conviction for aggravated trafficking in drugs is supported by sufficient evidence and is not against the manifest weight of the evidence. The jury did not lose its way and create such a manifest miscarriage of justice that appellant's conviction must be reversed and a new trial ordered. Appellant's first and second assignments of error are overruled.

{¶ 27} Judgment affirmed.

M. POWELL, P.J., and BYRNE, J., concur.

- 9 -