[Cite as *State v. Altman*, 2022-Ohio-2380.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2021-12-071 |
| | : | O P I N I O N |
| - vs - | | 7/11/2022 |
| | : | |
| RAYMOND ALTMAN, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2021 CR 00450

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas Horton, Assistant Prosecuting Attorney, for appellee.

Brian T. Goldberg, for appellant.


**PIPER, P.J.**

{¶1} Appellant, Raymond Altman, appeals his conviction for felony domestic violence after a jury trial in the Clermont County Court of Common Pleas.

{¶2} In early May 2021, Altman was staying at the home of his mother, Angelia White, while she travelled out of state. Sometime between the evening of May 4 and early morning of May 5, 2021, she returned, and the two of them had an argument. The argument

became violent. Jason Green, who was White's fiancé and also staying at White's residence, called the police at which time Altman left the residence. Bethel Police Officer Tommy Collopy arrived shortly thereafter and interviewed both White and Green around 3:00 a.m. As a result of his investigation, a warrant was subsequently issued for Altman's arrest.

{¶3} The following day, Bethel Police Corporal Gerald Brees, Jr., was dispatched pursuant to a tip that Altman had been sighted near White's residence. Corporal Brees located Altman and arrested him. Upon presentation to the grand jury, Altman was indicted for one count of domestic violence with a prior conviction, in violation of R.C. 2919.25(A), a felony of the fourth degree. The matter proceeded to a jury trial on October 13, 2021, lasting two days. The jury heard testimony from White, Green, Officer Collopy, Corporal Brees, the 9-1-1 dispatcher Stacy Davidson, Sheree McCall (White's sister who also stayed at the residence), and Altman.

{¶4} White testified that within 30 minutes of returning home on the evening in question, an argument developed between her and Altman. She testified that Altman appeared to be under the influence of drugs or alcohol. And she repeatedly asked Altman to leave which he repeatedly refused to do. White threatened to call the police wherein Altman responded by tackling her, punching her in the face with a closed fist several times, and choking her. Green, who was asleep at the time, was awakened by the commotion and observed Altman beating White. Green attempted to stop Altman but was unable to do so. Green then resorted to calling the police. McCall, who was also asleep, testified that she, too, was awakened only to observe Altman beating and strangling White. Green calling the police caused Altman to leave the house. However, before leaving, Altman threatened that if the police asked him what happened, Altman would tell them that White had attacked him with the baseball bat sitting next to the door. It was shortly thereafter Officer Collopy

arrived, observed White's injuries, and interviewed White and Green. McCall had returned to bed by the time Officer Collopy arrived, and he did not realize that she was present in the residence or had witnessed the altercation.

{¶5} Altman testified disputing White's characterization of events. He offered a very different explanation of the events. Altman testified that when White returned home, she appeared to be under the influence of drugs. According to Altman, White grabbed the baseball bat she keeps near her front door and threatened him. Denying he was ever asked to leave, Altman claimed that he repeatedly attempted to leave but White stopped him each time. Altman continued in his testimony, indicating that White hit him with the baseball bat before he was eventually able to disarm her and leave the residence. Altman claimed that he never struck or harmed his mother, White.

{¶6} After hearing closing arguments and receiving the trial judge's Instructions as to the law, the jury deliberated upon the evidence and found Altman guilty as charged. Later, at a sentencing hearing, Altman received a sentence of eighteen months in prison. Altman timely appealed, raising the following assignment of error.

{¶7} MR. ALTMAN'S CONVICTION FOR DOMESTIC VIOLENCE WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND RAN CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶8} In his sole assignment of error, Altman argues that the state failed to present sufficient evidence to convict him of domestic violence and that his conviction was against the manifest weight of the evidence. We disagree.

{¶9} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Wilson*, 12th Dist. Fayette Nos. CA2021-12-027 and CA2021-12-028, 2022-Ohio-1985, ¶ 19. When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine

whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Johnston*, 12th Dist. Warren No. CA2021-09-085, 2022-Ohio-2097, ¶ 18. The relevant inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Worship*, 12th Dist. Warren No. CA2020-09-055, 2022-Ohio-52, ¶ 32.

{¶10} Conversely, a manifest weight challenge concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of an issue rather than the other. *State v. Lee*, 12th Dist. Fayette Nos. CA2020-09-014 and CA2020-09-015, 2021-Ohio-2544, ¶ 17. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Garlough*, 12th Dist. Warren No. CA2021-06-051, 2022-Ohio-1276, ¶ 12.

{¶11} In reviewing a manifest weight challenge, an appellate court "'must be mindful that the original trier of fact was in the best position to judge the credibility of the witnesses and the weight to be given the evidence.'" *State v. Hensley*, 12th Dist. Butler No. CA2021-04-040, 2021-Ohio-3702, ¶ 23, quoting *State v. Hilton*, 12th Dist. Butler No. CA2015-03-064, 2015-Ohio-5198, ¶ 18. Thus, an appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Miller*, 12th Dist. Preble No. CA2019-11-010, 2021-Ohio-162, ¶ 14. "A determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Billingsley*, 12th Dist. Butler Nos. CA2019-05-075 and CA2019-05-076, 2020-Ohio-2673,

¶ 15.

**{¶12}** Appellant was convicted of domestic violence in violation of R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22. Physical harm means "any injury * * * regardless of its gravity or duration." R.C. 2901.01(A)(3).

**{¶13}** Altman argues that the state's evidence was insufficient to convict him because "[o]utside of photographs showing apparent injuries to Ms. White, there is no other physical evidence" and that "[a]lmost the entirety of the case is based on testimony from witnesses * * *." He further argues that his conviction for domestic assault was against the manifest weight of the evidence—or was not supported by sufficient evidence—because the testimony of the state's witnesses "at times was inconsistent." However, Altman only singles out White's testimony as inconsistent and not credible. Specifically, he cites her recollection as to the timing of the altercation and her statements to police about a baseball bat.

**{¶14}** Altman highlights the discrepancy between White's recollection that she arrived home between 7:00 p.m. and 9:00 p.m. and the altercation happened within thirty minutes, with the fact that the 9-1-1 call was placed around 3:00 a.m. He asserts that this discrepancy casts serious doubt on White's credibility as a witness. Additionally, Altman notes that at trial, White denied having told law enforcement that Altman said he would tell officers that she hit him with a baseball bat. This was contrary to her recorded statement to Officer Collopy shortly after the incident, which was admitted as an exhibit. Once again, Altman argues that this inconsistency calls into question White's credibility as a witness.

{¶15} We begin our analysis by noting that "[t]he decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." (Citation omitted.) *State v. Goodwin*, 12th Dist. Butler No. CA2016-05-099, 2017-Ohio-2712, ¶ 34. "[I]t is well-established that determinations regarding witness credibility, conflicting testimony, and the weight to be given such evidence are primarily for the trier of fact." *State v. K.W.*, 12th Dist. Warren No. CA2016-01-004, 2016-Ohio-7365, ¶ 26. "[A]s the trier of fact, the jury was free to believe or disbelieve all, part, or none of the testimony of the witnesses presented at trial." *State v. Glover*, 12th Dist. Brown No. CA2015-01-002, 2015-Ohio-3707, ¶ 37.

{¶16} The inconsistencies Altman emphasizes in an attempt to discredit White's testimony were addressed at trial. When asked on cross-examination about her recollection of the timing of the incident, White testified that she was uncertain, having driven for eight hours before arriving home that evening. As to White's inability to recall telling Officer Collopy about Altman's statement regarding the baseball bat, Officer Collopy himself was also unable to recall being told about a baseball bat. Even if there were inconsistencies in White's testimony, "[t]he trier of fact may take note of any inconsistencies in the witness' testimony and resolve them accordingly, believing all, part, or none of each witness's testimony." *State v. Schils*, 12th Dist. Clermont No. CA2019-08-067, 2020-Ohio-2883, ¶ 18. "[I]nconsistencies in the evidence alone do not mean that a decision is against the manifest weight of the evidence." *State v. Deck*, 12th Dist. Warren No. CA2020-10-066, 2021-Ohio-3145, ¶ 21. Such inconsistencies in the testimony of a single witness alone do not require that the jury's verdict be reversed.

{¶17} This case is not one in which the evidence presented at trial weighs heavily in favor of acquittal. It is Altman's version of events as to what happened against the testimony of White, Green, and McCall. "[W]hen conflicting evidence is presented at trial,

a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17. In convicting Altman of domestic violence with a prior conviction, it is clear that the jury chose to give considerable weight to the testimony of White, Green, and McCall, as well as the corroborating testimony of Davidson, Officer Collopy, and Corporal Brees. The jury was not obligated to believe Altman's testimony, and in fact it was "free to believe or disbelieve all, part, or none" of each of the witnesses' testimony. *State v. Roberts*, 12th Dist. Warren No. CA2020-12-089, 2021-Ohio-3073, ¶ 23.

{¶18} After giving considerable review to the record and weighing all inferences and the credibility of the witnesses, we find that Altman's conviction for domestic violence with a prior was supported by sufficient evidence and was not against the weight of the evidence. The state presented testimony and evidence from which the jury, as trier of fact, could have found all the essential elements of the offense proven beyond a reasonable doubt. The jury appropriately decided what evidence to believe and what weight to assign to that evidence. In finding Altman guilty, the jury did not lose its way or create a manifest miscarriage of justice. Altman's sole assignment of error is not well taken, and is consequently overruled.

{¶19} Judgment affirmed.

S. POWELL and HENDRICKSON, JJ., concur.