[Cite as *State v. K.W.*, 2016-Ohio-7365.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO.   CA2016-01-004 |
| Plaintiff-Appellee, | : | |
| | : | O P I N I O N |
| - vs - | : | 10/17/2016 |
| | : | |
| K.W., | : | |
| Defendant-Appellant. | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 15N000559

David P. Fornshell, Warren County Prosecuting Attorney, Kathryn M. Horvath, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

CiceroAdams, LLC, Sarah E. Michel, 500 East Fifth Street, Dayton, Ohio 45402, for appellant

**S. POWELL, J.**

{¶ 1}  Appellant, K.W., appeals from the decision of the Warren County Court of Common Pleas, Juvenile Division, adjudicating him a delinquent child.  K.W. also appeals from the juvenile court's dispositional decision committing him to the Ohio Department of Youth Services ("ODYS") for a minimum period of two years.  For the reasons outlined below, we affirm.

{¶ 2} On May 15, 2015, a detective with the Hamilton Township Police Department filed a complaint with the juvenile court alleging K.W. was a delinquent child for having committed acts that if charged as an adult would constitute aggravated burglary in violation of R.C. 2911.11(A)(1), a first-degree felony, attempted aggravated burglary in violation of R.C. 2911.11(A)(1) and 2923.02(A), a second-degree felony, attempted rape in violation of R.C. 2907.02(A)(2) and 2923.02(A), also a second-degree felony, assault on a police officer in violation of R.C. 2903.13(A), a fourth-degree felony in accordance with R.C. 2903.13(C)(2)(5), and public indecency in violation of R.C. 2907.09(A)(1), a fourth-degree misdemeanor.

{¶ 3} The charges stemmed from allegations that on the night of May 9, 2015, K.W., while in a drug-induced state, stripped down naked outside his home and proceeded to cross a nearby field to two neighboring properties. Once there, K.W. began searching for a woman to have sex with in order to prove he was not a homosexual. K.W. then attempted to rape one of his neighbors before being shot in the abdomen. After police arrived, K.W. grabbed a responding officer's groin and pinched the officer's inner thigh while the officer tended to his injuries. Throughout this entire ordeal, K.W. was yelling obscenities and other vulgarities about the female genitalia, repeatedly claiming that he was not gay, and masturbating his erect penis. It is undisputed that K.W. was then just 17 years old and had just graduated from high school.

{¶ 4} The matter ultimately proceeded to a two-day adjudication hearing that concluded on November 18, 2005. At that hearing, the juvenile court heard testimony from K.W., as well as K.W.'s neighbors, Mr. and Mrs. Gibbs and Mr. and Mrs. Shelley, and Officer Richard Smith. Officer Smith is a police officer with the Hamilton Township Police Department who was the first officer to arrive at the scene and who initially tended to K.W.'s injuries. As part of his testimony, K.W. admitted that he had been celebrating his high school

graduation "[e]xtremely" by consuming cocaine, amphetamines, acid, marijuana, and alcohol. Although admitting to this extensive drug use, K.W. testified that he does not remember anything else about that night.

{¶ 5} On December 8, 2015, the juvenile court issued a decision adjudicating K.W. a delinquent child for having committed each of the above named offenses. Thereafter, on January 4, 2016, the juvenile court held a disposition hearing and issued a dispositional decision committing K.W. to ODYS for a minimum of two years. As part of his commitment, the juvenile court ordered K.W. to undergo sex offender treatment and referred him for a complete psychiatric evaluation and a drug and alcohol assessment. K.W. now appeals, raising two assignments of error for review.

{¶ 6} Assignment of Error No. 1:

{¶ 7} THE TRIAL COURT ERRED BY FINDING THE DELINQUENT CHILD RESPONSIBLE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 8} In his first assignment of error, K.W. argues his adjudication as a delinquent child for having committed acts that if charged as an adult would constitute attempted aggravated burglary, aggravated burglary, attempted rape, and assault on a police officer, was not supported by sufficient evidence and otherwise against the manifest weight of the evidence.[1] We disagree.

**Standard of Review**

{¶ 9} In reviewing whether a juvenile's delinquency adjudication is supported by sufficient evidence and not against the manifest weight of the evidence, the standard of review is the same as the standard used in adult criminal cases. *In re B.T.B.*, 12th Dist. Butler No. CA2014-10-199, 2015-Ohio-2729, ¶ 16.

---

1. As noted above, K.W. was also adjudicated a delinquent child for committing an act that if charged as an adult would constitute public indecency. However, K.W. did not appeal from that adjudication.

- 3 -

{¶ 10} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Intihar*, 12th Dist. Warren No. CA2015-05-046, 2015-Ohio-5507, ¶ 9. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. In other words, "the test for sufficiency requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34, citing *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 33. When evaluating the sufficiency of the evidence, this court must "defer to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 132.

{¶ 11} On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34. However, while appellate review includes the responsibility to consider the credibility of witnesses and the weight given to the evidence, these issues are primarily matters for the trier of fact to decide. *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009,

2011-Ohio-5226, ¶ 81. An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Blair*, 12th Dist. Butler No. CA2014-01-023, 2015-Ohio-818, ¶ 43.

**Attempted Aggravated Burglary (Gibbs' Residence)**

{¶ 12} As noted above, K.W. was adjudicated a delinquent child for committing an act that if charged as an adult would constitute attempted aggravated burglary at the Gibbs' residence in violation of R.C. 2911.11(A)(1) and 2923.02(A), a second-degree felony.

{¶ 13} Aggravated burglary in violation of R.C. 2911.11(A)(1), the underlying offense upon which this attempt charge was predicated, prohibits any person, by "force, stealth or deception," from trespassing "in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense" during which time that person "inflicts, or attempts or threatens to inflict physical harm on another." As defined by R.C. 2909.01(C)(1), the term "occupied structure" includes any house or building that is "maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present."

{¶ 14} Pursuant to R.C. 2923.02(A), which defines criminal attempt, "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." In other words, a criminal attempt is complete when a person's acts constitute a substantial step in a sequence of events designed to result in the perpetration of a crime. *State v. Clements*, 12th Dist. Butler No. CA2009-11-277, 2010-Ohio-4801, ¶ 20, citing *State v. Green*, 122 Ohio App.3d 566, 569-570 (12th Dist.1997). As defined by the Ohio Supreme Court, a "substantial step" involves conduct that is "'strongly corroborative of the actor's criminal purpose.'" *State v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, ¶ 95,

quoting *State v. Woods*, 48 Ohio St.2d 127 (1976), paragraph one of the syllabus, judgment vacated on other grounds, 438 U.S. 910, 98 S.Ct. 3133 (1978).

{¶ 15} K.W. argues his adjudication for attempted aggravated burglary was not supported by sufficient evidence and was against the manifest weight of the evidence since the state failed to prove he attempted to trespass into the Gibbs' residence in order to rape Mrs. Gibbs. However, nothing about R.C. 2911.11(A)(1) requires the state to prove K.W. attempted to trespass into the Gibbs' residence in order to commit a rape. Rather, the statute merely requires the state to prove K.W. attempted to trespass into the Gibbs' residence with purpose to commit in the structure "any criminal offense" and that he "inflict[ed], or attempt[ed] or threaten[ed] to inflict physical harm" on either Mr. or Mrs. Gibbs.

{¶ 16} The record provides overwhelming evidence to support K.W.'s adjudication for attempted aggravated burglary at the Gibbs' residence. Mrs. Gibbs testified she heard yelling outside her home and went to investigate when she discovered a male figure later identified as K.W. standing naked in her driveway. Mrs. Gibbs testified that she then opened the door and poked her head out to see what was going on when K.W. looked directly at her and stated "do you want some, oh pretty girl, come and get it." Mrs. Gibbs testified she then closed the door and went to get her husband who then also opened the door and looked outside. Upon opening the door, Mr. Gibbs testified a completely naked K.W. turned to him and yelled "[f]**k you, I'm not gay, you son of a b***h, f**k you," before charging towards him. Taken aback, Mr. Gibbs testified he slammed the door shut and locked it just before K.W. rammed himself into the door with such force that it created two dents. Mr. Gibbs then testified that he called the police.

{¶ 17} As a result of K.W.'s bizarre conduct, and in light of his profanity laced comments towards both her and her husband, Mrs. Gibbs testified that she was afraid that K.W. would have tried to rape her if he had come into the house. Mrs. Gibbs also testified

that it was possible K.W. would have also tried to fight her husband if he had successfully made it inside. Similarly, Mr. Gibbs testified he believed K.W. was going to come into their home and have some type of confrontation with him if he had not immediately closed and locked the door.

{¶ 18} As the juvenile court found, K.W.'s "intended target of the rape was Mrs. Gibbs and his intended target of the assault was Mr. Gibbs, both of which constitute an attempt or threat to inflict physical harm, making [K.W.'s] conduct an attempted aggravated burglary." We agree with the juvenile court's decision. Therefore, finding no merit to K.W.'s argument, we find K.W.'s adjudication for attempted aggravated burglary at the Gibbs' residence was supported by sufficient evidence and not against the manifest weight of the evidence.

### Aggravated Burglary (Shelleys' Residence)

{¶ 19} K.W. was also adjudicated a delinquent child for committing an act that if charged as an adult would constitute aggravated burglary of the Shelleys' residence in violation of R.C. 2911.11(A)(1), a first-degree felony. As noted above, R.C. 2911.11(A)(1) prohibits any person, by force, stealth or deception, from trespassing "in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense" during which time that person "inflicts, or attempts or threatens to inflict physical harm on another."

{¶ 20} K.W. initially argues his adjudication for aggravated burglary was not supported by sufficient evidence and was against the manifest weight of the evidence because the Shelleys were actually outside in their front yard when he broke through their screen door and entered their home. In other words, K.W. argues that the state failed to show that either Mr. or Mrs. Shelley were actually inside their home at the same time that the trespass took place, thus failing to establish that a trespass occurred "when another person * * * is present."

{¶ 21} As this court has stated previously, the element "when another person * * * is present" as used in R.C. 2911.11(A)(1) "is sufficiently established if the state demonstrates the presence of the person inside the structure is associated in time with the entry, or the entry and the presence of the person inside are part of one continuous occurrence." *State v. Ramirez*, 12th Dist. Clermont No. CA2004-06-046, 2005-Ohio-2662, ¶ 26. That is certainly the case here for the record is clear that both Mr. and Mrs. Shelley were standing in the front yard of their home at the time K.W. broke through their screen door and entered their home. This trespass occurred within mere minutes after both Mr. and Mrs. Shelley saw a naked K.W. enter onto their property yelling "I'm not gay, I want your p***y, I'm not gay" while erect and masturbating, conduct that prompted Mr. Shelley to get his gun. Mr. Shelley then followed K.W. into the home, but quickly exited after K.W. turned and approached him in the hallway. This element was clearly satisfied.

{¶ 22} K.W. next argues his adjudication for aggravated burglary was not supported by sufficient evidence and was against the manifest weight of the evidence since he did not inflict, attempt to inflict, or threaten to inflict physical harm on either Mr. or Mrs. Shelley while inside their home. K.W. also argues that the state failed to prove he intended to rape anyone upon entering the Shelleys' residence. However, as the juvenile court correctly noted, based on K.W.'s strange behavior, "the only logical conclusion is that [K.W.] entered the Shelley's home with the purpose to commit a crime; namely rape, which is an attempt to or threat to inflict physical harm." We again agree with the juvenile court's decision and find these elements were also clearly satisfied. Therefore, finding no merit to either of K.W.'s arguments, we find K.W.'s adjudication for aggravated burglary at the Shelleys' residence was supported by sufficient evidence and not against the manifest weight of the evidence.

**Attempted Rape (Mrs. Shelley)**

{¶ 23} K.W. was further adjudicated a delinquent child for committing an act that if

charged as an adult would constitute the attempted rape of Mrs. Shelley in violation of R.C. 2907.02(A)(2) and 2923.02(A), a second-degree felony.

{¶ 24} Pursuant to R.C. 2907.02(A)(2), the underlying offense that this attempt charge is predicated, "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." However, as stated previously, a criminal attempt is complete when a person's acts constitute a substantial step in a sequence of events designed to result in the perpetration of a crime. *Clements*, 2010-Ohio-4801 at ¶ 20. Thus, as it relates to the offense of attempted rape, "attempted rape requires that the actor (1) intend to compel submission to sexual conduct by force or threat, and (2) commit some act that 'convincingly demonstrates' such intent." *State v. Davis*, 76 Ohio St.3d 107, 114 (1996). The term "sexual conduct" is defined by R.C. 2907.01(A) to include "vaginal intercourse between a male and female[.]"

{¶ 25} K.W. argues his adjudication for the attempted rape of Mrs. Shelley was not supported by sufficient evidence and was against the manifest weight of the evidence since the state did not present evidence that he took a substantial step to "compel submission to sexual conduct by force or threat." However, this ignores Mrs. Shelley's direct testimony that a completely naked K.W. approached her with an erect penis while masturbating and stated "I want your p***y" before lunging towards her and reaching up to choke her just prior to him being shot. Mr. Shelley also testified that K.W. approached his wife and stated "I'm not gay, I want your p***y, I want to f**k you," before K.W. reached up and choked her. Seeing his wife in danger, Mr. Shelley testified he shot K.W. According to Mrs. Shelley, "[t]he fact that he was naked and jacking off, I'll be honest, a rape is a lot less than what I was terrified, um yeah I thought he was going to kill me, he was coming up at me, he was out of his mind, and he attacked me." This constitutes overwhelming evidence to support K.W.'s adjudication for the attempted rape of Mrs. Shelley.

{¶ 26} Nevertheless, K.W. argues his adjudication for the attempted rape of Mrs. Shelley was improper since there were some discrepancies between her testimony and that of her husband, Mr. Shelley. K.W. also notes the slight differences between the Shelleys' trial testimony and the statements they provided to police. However, it is well-established that determinations regarding witness credibility, conflicting testimony, and the weight to be given such evidence are primarily for the trier of fact. *In re N.J.M.*, 12th Dist. Warren No. CA2010-03-026, 2010-Ohio-5526 ¶ 39. It is equally well-established that when conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony. *In re M.G.*, 12th Dist. Butler No. CA2015-06-126, 2016-Ohio-2677, ¶ 36, citing *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17. "The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Rhine*, 2d Dist. Montgomery No. 23486, 2010-Ohio-3117, ¶ 39. Therefore, finding no merit to either of K.W.'s arguments, we find K.W.'s adjudication for the attempted rape of Mrs. Shelley was supported by sufficient evidence and not against the manifest weight of the evidence.

**Assault on a Police Officer (Officer Smith)**

{¶ 27} Finally, K.W. was adjudicated a delinquent child for committing an act that if charged as an adult would constitute assault on a police officer in violation of R.C. 2903.13(A), a fourth-degree felony in accordance with R.C. 2903.13(C)(2)(5). Pursuant to that statute, "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."

{¶ 28} K.W. argues his adjudication for the assault on Officer Smith was not supported by sufficient evidence and was against the manifest weight of the evidence since he was "intoxicated on multiple different substances," which impacted his ability to act knowingly.

However, while we have no doubt K.W. was highly intoxicated, pursuant to R.C. 2901.21(E), "[v]oluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense." This court has also specifically stated that "the defense of voluntary intoxication is not available." *State v. Haney*, 12th Dist. Clermont No. CA2005-07-068, 2006-Ohio-3899, ¶ 27; *see, e.g., State v. Stockhoff*, 12th Dist. Butler No. CA2001-07-179, 2002 WL 449532, *2 (Mar. 25, 2002) (voluntary intoxication unavailable as a defense to defendant charged with burglary who alleged he was unable to act "knowingly" due to his intoxication). K.W.'s claim otherwise is without merit.

{¶ 29} K.W. also argues his adjudication for the assault on Officer Smith was not supported by sufficient evidence and was against the manifest weight of the evidence since Officer Smith did not seek medical attention for his injuries. However, the fact that Officer Smith did not seek medical attention after K.W. grabbed his groin or pinched his inner thigh is immaterial. Officer Smith testified that it hurt when K.W. grabbed his groin and that he had a bruise where K.W. pinched his inner thigh. As defined by R.C. 2901.01(A)(3), the term "physical harm to persons" means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." Therefore, finding no merit to either of K.W.'s arguments, we find K.W.'s adjudication for the assault on Officer Smith was supported by sufficient evidence and not against the manifest weight of the evidence. Accordingly, K.W.'s first assignment of error is overruled.

{¶ 30} Assignment of Error No. 2:

{¶ 31} THE TRIAL COURT ERRED AND THE DELINQUENT CHILD'S DISPOSITION SHALL BE REMANDED TO THE TRIAL COURT FOR DISPOSITION AS THE DISPOSITION THAT HE RECEIVED IS CONTRARY TO LAW AND IN VIOLATION OF HIS EIGHTH AMENDMENT RIGHTS UNDER THE CONSTITUTION OF THE UNITED STATES OF AMERICA.

{¶ 32} In his second assignment of error, K.W. argues the juvenile court's dispositional decision committing him to the ODYS for a minimum of two years was improper and constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. We disagree.

{¶ 33} A juvenile court's disposition for a juvenile adjudicated delinquent is a matter within the juvenile court's discretion. *In re D.E.*, 12th Dist. Butler Nos. CA2009-03-086, CA2009-03-087, and CA2009-06-161, 2010-Ohio-209, ¶ 9. In turn, this court will not disturb a juvenile court's decision regarding a juvenile disposition absent an abuse of discretion. *In re D.S.*, 111 Ohio St.3d 361, 2006-Ohio-5851, ¶ 6. An abuse of discretion connotes more than an error in law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *In re A.M.I.*, 12th Dist. Warren No. CA2014-07-095, 2015-Ohio-367, ¶ 25.

{¶ 34} Unlike other sentencing statutes, "[t]he juvenile disposition statutes do not exist merely to punish children and prevent future crime[.]" *In re Chappell*, 164 Ohio App.3d 628, 2005-Ohio-6451, ¶ 49 (7th Dist.). Rather, pursuant to R.C. 2152.01(A), the overriding purpose behind a juvenile disposition is to "provide for the care, protection, and mental and physical development of children * * *, protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender," which shall be achieved by "a system of graduated sanctions and services." R.C. 2152.01(B) further provides that a juvenile disposition shall be "reasonably calculated" to achieve these purposes, "commensurate with and not demeaning to the seriousness of the delinquent child's * * * conduct and its impact on the victim, and [be] consistent with dispositions for similar acts committed by similar delinquent children[.]"

{¶ 35} K.W. claims the juvenile court's dispositional decision was improper and constitutes a punishment outside the bounds of the juvenile dispositional statutes since he

did not have an extensive prior juvenile record and was under the influence of multiple substances at the time of the offenses. As a result, instead of committing him to ODYS for a minimum of two years, K.W. believes the juvenile court should have placed him on probation or possibly detention at a local detention facility so that he could receive the substance abuse and mental health treatment that he needs. K.W. believes this type of disposition would have been better suited to address his needs while still meeting the overriding purposes behind a juvenile disposition.

{¶ 36} However, although we appreciate the overriding purposes behind a juvenile disposition, "some circumstances justify substantial confinement in order to fulfill the purposes of protecting public safety and holding the offender accountable." *In re T.H.*, 12th Dist. Clermont Nos. CA2006-02-021 and CA2006-02-022, 2007-Ohio-352, ¶ 13. That is certainly the case here. Again, the record contains overwhelming evidence K.W. committed acts that would have constituted first, second, and fourth-degree felonies if committed by an adult. As noted above, K.W. stripped down naked and attacked his unsuspecting neighbors in a drug-induced haze while searching for a woman to have sex with in order to prove he was not a homosexual. This ill-conceived and poorly executed plan continued even after he was shot and responding officers arrived at the scene.

{¶ 37} This is one of the more unique set of circumstances this court has encountered. Nevertheless, after a thorough review of the record, we find nothing about the juvenile court's dispositional decision that was contrary to law. The juvenile court's dispositional decision also cannot be said to constitute cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution, which is generally "'limited to torture or other barbarous punishments, degrading punishments unknown at common law, and punishments which are so disproportionate to the offense as to shock the moral sense of the community.'" *State v. Blanton*, 12th Dist. Butler No. CA2008-09-235, 2009-Ohio-3311, ¶ 28, quoting

*McDougle v. Maxwell*, 1 Ohio St.2d 68, 69 (1964). None of those circumstances apply here. In so holding, we note that the record indicates K.W. was ordered to undergo sex offender treatment and was referred for a complete psychiatric evaluation and a drug and alcohol assessment while committed to ODYS. Therefore, finding no error in the juvenile court's dispositional decision, K.W.'s second assignment of error is overruled.

**{¶ 38}** Judgment affirmed.

PIPER, P.J., and RINGLAND, J., concur.