[Cite as *In re T.H.*, 2025-Ohio-5564.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|  |  |  |
|---|---|---|
| IN RE: | : | CASE NO. CA2025-03-021 |
| T.H. | : | |
|  | : | OPINION AND JUDGMENT ENTRY 12/15/2025 |
|  | : | |
|  | : | |
|  | : | |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. 2024JA57977, 2024JA57957, 2024JA57963, 2024JA57981

W. Stephen Haynes, Clermont County Public Defender, and Karen Oakley, Assistant Public Defender, for appellant.

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Zachary Garrison, Assistant Prosecuting Attorney, for appellee.

**O P I N I O N**

**PIPER, P.J.**

{¶ 1} Appellant, T.H. ("Tyrone Hunt"), appeals from the decision of the Clermont County Court of Common Pleas, Juvenile Division, finding him to be a serious youthful

offender ("SYO") and sentencing him to a discretionary SYO dispositional sentence that required him to serve a minimum one-year commitment to the Department of Youth Services ("DYS").[1] For the reasons outlined below, we affirm the juvenile court's decision.

**Facts and Procedural History**

{¶ 2} On September 6, 10, and 12, 2024, officers with the Union Township Police Department filed a series of complaints against the then 15-year-old Hunt. These complaints alleged Hunt, who is a Black male, was a delinquent child for having engaged in conduct that would have resulted in him being charged with a total of 17 criminal offenses if those offenses had been committed by an adult. This included six first- and second-degree felonies. Those six felonies being, four counts of first-degree felony grand theft of a firearm from a federally licensed firearms dealer in violation of R.C. 2913.02(A)(1) and (B)(4); one count of second-degree felony attempted grand theft of a firearm from a federally licensed firearms dealer in violation of R.C. 2923.02(A) and (E)(1) and 2913.02(A)(1) and (B)(4); and one count of first-degree felony engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1) and (B)(1).

{¶ 3} These six felonies were based on allegations that Hunt had been the primary instigator among a group of three other juveniles in their efforts to steal certain firearms from several different federally licensed firearms dealers located in the Clermont County, Ohio area during the early morning hours of August 25, 2024. These thefts were done by the juveniles first stealing two cars. The juveniles would then ram one of those stolen cars into the building where the federally licensed firearms dealer being targeted was located.[2] This provided the juveniles with access to the firearms located inside. Once

---

1. For purposes of readability, we have provided T.H. with a fictitious name.

2. Hunt, within his appellate brief, claims that he was 14 years old at the time of the offenses and that he turned 15 during the pendency of this case. This is incorrect as the record firmly establishes that Hunt was

inside, the juveniles would then steal the desired firearms and flee the scene in the other stolen car that was parked and waiting outside. This ultimately resulted in the juveniles stealing at least four firearms. These firearms included, among others, a Taurus GX4 9mm handgun stolen from Sportsman's Warehouse located in Union Township. The juveniles were subsequently apprehended, three almost immediately following a short police chase, whereas the fourth, Hunt, was arrested a few hours later at his home in Cincinnati where he lived with his mother.[3]

{¶ 4} On September 12, 2024, the State filed six notices with the juvenile court. These six notices were filed by the State in accordance with R.C. 2152.13(A)(4). The notices set forth the State's intent to pursue a discretionary SYO dispositional sentence against Hunt for each of the six above-named first- and second-degree felony offenses. The State filed these notices with the juvenile court based on the statutory authority outlined in R.C. 2152.11(D)(2)(b) and 2152.11(E)(1). Those statutes allow for the imposition of a discretionary SYO dispositional sentence against a child if the child has been adjudicated a delinquent child for committing acts that would be considered first- and second-degree felonies if committed by an adult.

{¶ 5} A discretionary SYO dispositional sentence is governed by R.C. 2152.13(D)(2). A discretionary SYO dispositional sentence is a type of "blended sentence that consists of a juvenile disposition coupled with a stayed adult sentence." *State v. Nicholas*, 2022-Ohio-4276, ¶ 38. Given that it is a blended sentence, a discretionary SYO dispositional sentence allows the juvenile court to "enforce the adult portion of the

---

born on February 20, 2009. Therefore, at the time of the offenses, Hunt had already turned 15 years old. Hunt then turned 16 years old on February 20, 2025.

3. Hunt was initially able to avoid apprehension by fleeing from the police on foot. Upon fleeing, Hunt stole yet another car that he then drove back to his mother's home in Cincinnati. Once there, Hunt used a stolen credit card to have food delivered to his mother's house via DoorDash. It was at this time that Hunt was located by police and placed under arrest.

sentence at a later time if the juvenile commits certain acts that indicate that the juvenile disposition has been unsuccessful in rehabilitating him." *State v. D.H.*, 2009-Ohio-9, ¶ 2. That is to say, "how the juvenile responds to that disposition will determine whether the stay is lifted on the adult sentence." *Id.* at ¶ 30. This is because, rather than being a mandatory part of the sentence, the adult portion is merely a *potential* sentence that is dependent upon the juvenile's successful or unsuccessful completion of the traditional juvenile disposition(s) also being imposed upon the adjudicated delinquent child. *Id*

{¶ 6} On September 16, 2024, Hunt entered a plea denying each of the 17 total charges that had been levied against him. However, at a subsequent adjudicatory hearing held on January 24, 2025, Hunt withdrew his plea of denial and instead entered a plea of admission to all 17 charges. The juvenile court accepted Hunt's admission plea and thereafter adjudicated Hunt a delinquent child as it related to each of those 17 charges. This necessarily included the juvenile court adjudicating Hunt a delinquent child for each of the six above-named first- and second-degree felony offenses. The record does not contain a transcript of this adjudicatory hearing. The record is nevertheless clear that Hunt admitted to being involved with and taking a part in the stealing of several cars that he and three other juveniles then used to ram into buildings containing federally licensed firearms dealers in order to gain access to the firearms located inside.

{¶ 7} On February 19, 2025, the juvenile court held a dispositional hearing. At the start of that hearing, the juvenile court advised Hunt that it would be receiving "testimony and argument" as it related to whether a discretionary SYO dispositional sentence should be imposed upon Hunt. The juvenile court also advised Hunt that it would be receiving "testimony or argument or both on what sentence or disposition the Court should impose on the juvenile charges." This included the juvenile court hearing argument from the State detailing Hunt's involvement in the planning and execution of the various firearm thefts

referenced above. Hunt never objected to any of the facts as presented and argued by the State. This included Hunt not objecting to the State arguing that the thefts, for which the State claimed Hunt was "calling the shots" and "directing everybody," caused "over $60,000 in damage to various buildings and vehicles." This also included Hunt not objecting to the State arguing that it was its belief, based on the admissions received from Hunt's three co-defendants, that the thefts were committed "to fuel and arm an ongoing gang conflict."

{¶ 8} Upon the State concluding its argument on the facts and the applicable law, the court then heard a brief statement from a detective with the Union Township Police Department who had been tasked with investigating the case. As part of this statement, the detective advised the juvenile court that he had "not seen anything that comes close to this, the facts and the crimes that happened on that night, whether it be a juvenile or an adult," during his approximate 17-year tenure as a law enforcement officer in the Clermont County area. Just as with the State's argument on the facts and the law, Hunt never objected to the detective providing the juvenile court with this statement. Hunt also never requested that the detective be placed under oath prior to issuing his statement. This is in addition to Hunt never requesting to question the detective about his statement.

{¶ 9} Rather, after the detective provided the juvenile court with his statement, the juvenile court then heard opposing arguments and mitigation from Hunt's counsel. These arguments included counsel accusing the State of requesting a discretionary SYO dispositional sentence be imposed upon Hunt simply because he is a young Black male who, unlike some of counsel's other Caucasian clients who had "done way worse [things]," made the unfortunate decision to involve himself in the "smash and grab" due

to his lack of a yet to be fully formed frontal cortex.[4] Upon the conclusion of counsel's arguments, and upon hearing additional mitigation from Hunt's mother, the trial court notified the parties that it would be taking the matter under advisement. This included the trial court notifying the parties that it would be issuing a written decision setting forth its finding with respect to whether a discretionary SYO disposition sentence should be imposed in this case.

{¶ 10} On March 4, 2025, the State filed a motion to dismiss with the juvenile court. Within that motion, the State requested the juvenile court issue an order dismissing five of the six notices it had previously filed with the court on September 12, 2024. Those notices, as stated above, notified the juvenile court of the State's intent to pursue a discretionary SYO dispositional sentence against Hunt for each of the six first- and second-degree felony offenses that had been levied against him. The State advised the juvenile court that it was now its intent to seek a discretionary SYO dispositional sentence as it related to just one of those six offenses. That offense being the charge alleging Hunt was a delinquent child for having stolen a Taurus GX4 9mm handgun from Sportsman's Warehouse in Union Township. The juvenile court granted the State's motion later that same day.

{¶ 11} On March 24, 2025, the juvenile court issued a detailed 12-page decision setting forth its finding that a discretionary SYO dispositional sentence should be imposed upon Hunt in this case. In so doing, the juvenile court stated, in pertinent part, that it was "the seriousness of the multiple crimes, the extensive planning and execution that went into their commitment, the lack of regard for the property of others, and the lack of

---

4. The frontal cortex is a portion of the human brain that "allows for higher-order thought processes, like executive functioning, the ability to pay attention to something, the ability to repress impulsivity, and the ability to think through emotional situations." *State v. Smith*, 295 Neb. 957, 968 (2017).

recognition of the wrongfulness of his acts" that ultimately convinced the court that a discretionary SYO dispositional sentence should be imposed in this case. The juvenile court noted that it had reached this decision based upon its consideration of "the arguments of counsel, the testimony, the statements of the victims, the pre-sentence investigation report, the youth assessment report, the psychological and risk assessments, the case files, and the extradition documents" that had been provided to the court for its review.[5]

{¶ 12} The juvenile court noted that such a review resulted in it finding, when considering the nature and circumstances of the case, that it was "readily apparent that extensive planning went into the commission of the offenses" for which Hunt "was the leader, the one calling the shots." This is in addition to the juvenile court finding:

> The nature of these crimes encompassed traveling throughout the tri-state, hitting four businesses establishments within a period of only seven and one-half hours to steal many firearms that could be utilized to injure as well as kill people. The circumstances of their commission entailed great planning and orchestration. There was no consideration given to the extent of injury caused to the victims of their crimes.

The juvenile court found this to be a "major concern" for the court. The juvenile court found the same held true as it related to the "lack of consciousness or wrongdoing" expressed by Hunt. This is in addition to the juvenile court finding Hunt's admitted "associations" with known gang members as part of the court's presentence investigation gave "great credibility" to the State's assertion that Hunt's "sole purpose in committing these offenses was to provide weapons to gang members that could result in serious

---

5. These documents, i.e., the victims' impact statements, the presentence-investigative report, the psychological evaluation and risk assessment, as well as extradition documents, are all contained within the case file and are a part of the record properly before this court on appeal. Thus, Hunt's claim set forth within his appellate brief that the juvenile court's references to other charges then pending against him in both Ohio and Kentucky were nothing more than the court "assuming" he had "participated in other crimes in other counties" is plainly refuted by the record.

physical harm or death to individuals."

{¶ 13} That same day, the juvenile court issued a separate dispositional decision. Within that decision, the juvenile court set forth the discretionary SYO dispositional sentence that it was imposing upon Hunt resulting from him being adjudicated a delinquent child for stealing a Taurus GX4 9mm handgun from Sportsman's Warehouse in Union Township. This disposition included the juvenile court ordering Hunt to serve a traditional juvenile disposition of a minimum one-year commitment to the DYS, with a maximum period not to exceed his 21st birthday, less 221 days of jail-time credit. This also included the juvenile court imposing upon Hunt a stayed adult prison sentence of a minimum term of three years with a maximum term of 54 months in the custody of the Ohio Department of Rehabilitation and Correction ("ODRC"). The juvenile court issued this decision in accordance with the authority provided under R.C. 2152.13(D)(2).

{¶ 14} On March 26, 2025, Hunt filed a notice of appeal. Oral argument on Hunt's appeal was held before this court on November 17, 2025. Hunt's appeal was thereafter submitted to this court for consideration. Hunt's appeal now properly before this court for decision, Hunt has raised two assignments of error for review.

**Hunt's First Assignment of Error**

{¶ 15} THE JUVENILE COURT ERRED AND ABUSED HIS DISCRETION I[N] FINDING T.H. TO BE A SERIOUS YOUTHFUL OFFENDER WHEN THERE WAS NO EVIDENCE PRESENTED TO SUPPORT THE FINDING.

{¶ 16} In his first assignment of error, Hunt argues the juvenile court erred by finding that a discretionary SYO dispositional sentence should be imposed upon him in this case. To support this argument, Hunt does not challenge whether the juvenile court made the statutorily required finding necessary to impose such a sentence. Hunt instead argues that the juvenile court's finding that a discretionary SYO dispositional sentence

- 8 -

should be imposed upon him was not supported by the record. We disagree.

{¶ 17} Pursuant to R.C. 2152.13(D)(2)(a)(i), before a juvenile court may impose a discretionary SYO dispositional sentence upon a child adjudicated delinquent, the court is required to make a certain statutorily mandated finding on the record. That finding being, "given the nature and circumstances of the violation and the history of the child, the length of time, level of security, and types of programming and resources available in the juvenile system," merely imposing a traditional juvenile disposition upon the child would be inadequate to provide the juvenile court with a reasonable expectation that the overriding purposes for juvenile dispositions outlined in R.C. 2152.01(A) would be met. Those overriding purposes are to "provide for the care, protection, and mental and physical development of children" who have been adjudicated delinquent. R.C. 2152.01(A). Those overriding purposes are also to "protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender." *Id.*

{¶ 18} Given its plain language, it is now generally well established that R.C. 2152.13(D)(2)(a)(i) sets forth "the factors [that] a juvenile court must consider" before imposing a discretionary SYO dispositional sentence upon an adjudicated delinquent child. *State v. D.H.*, 2009-Ohio-9, at ¶ 25. Those factors being, (1) the nature and circumstances of the violation; (2) the history of the child; and (3) the length of time, level of security, and types of programming and resources available to the child in the juvenile justice system. R.C. 2152.13(D)(2)(a)(i). Upon consideration of those factors, if the juvenile court finds, on the record, "that a juvenile disposition alone would be inadequate to meet the statutorily enunciated purposes of juvenile disposition" outlined in R.C. 2152.01(A), the juvenile court may then "impose an adult sentence, albeit stayed, on the child" in accordance with R.C. 2152.13(D)(2)(a)(i) and (iii). *D.H.* Should the juvenile court

make such a finding, R.C. 2152.13(D)(2)(a)(ii) requires the juvenile court to also impose upon the child one or more "traditional juvenile dispositions" set forth under R.C. 2152.16, 2152.19, and 2152.20 and, if applicable, R.C. 2152.17.

{¶ 19} This court reviews a juvenile court's finding that a discretionary SYO dispositional sentence should be imposed upon a child adjudicated delinquent under R.C. 2152.13(D)(2)(a)(i) for an abuse of discretion. *In re S.D.*, 2021-Ohio-2747, ¶ 12 (1st Dist.). "We will reverse the juvenile court's judgment only if it abused that discretion." *In re Wilson*, 2005-Ohio-3262, ¶ 8 (11th Dist.). "An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable." *In re J.G.*, 2021-Ohio-1624, ¶ 17 (3d Dist.). Consequently, an abuse of discretion occurs where a court fails "to exercise sound, reasonable, and legal decision making." *In re J.P.*, 2022-Ohio-2102, ¶ 19 (11th Dist.). That is to say, "[a]n abuse of discretion occurs when 'a court exercis[es] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority.'" *State v. Bates*, 2024-Ohio-5831, ¶ 8 (1st Dist.), quoting *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. This would include, for instance, a juvenile court finding a discretionary SYO dispositional sentence should be imposed where such a finding was not supported by the record. *See, e.g., In re J.G.*, 2021-Ohio-1624, at ¶ 33 (juvenile court did not abuse its discretion by imposing a discretionary SYO dispositional sentence upon appellant where the record supported the juvenile court's finding "the programming and resources available in the juvenile justice system alone were not adequate to rehabilitate him").

{¶ 20} Hunt argues the juvenile court abused its discretion by imposing a discretionary SYO dispositional sentence upon him in this case because he did not "meet the criteria" necessary to be classified as a SYO under R.C. 2152.13(D)(2)(a)(i). To support this claim, Hunt notes his lack of any contact with the juvenile justice system prior

to the case at bar. Hunt also notes that an assessment conducted as part of the juvenile court's presentence investigation determined that he was in the lower end of the moderate range of recidivism. Hunt argues that this determination indicates that the juvenile justice system had more than enough time to facilitate his rehabilitation without the need to punish him any further with a stayed adult prison sentence. This is in addition to Hunt noting that his conduct—stealing cars to crash into buildings containing federally licensed firearms dealers in order to gain access to the firearms located inside—did not result in any individual suffering any actual physical harm, nor did it result in any of the firearms ever being used.[6]

{¶ 21} These arguments all lead Hunt to boldly proclaim that "[a]bsolutely no evidence" was presented by the State to support the juvenile court's decision to impose a discretionary SYO dispositional sentence in this case. Hunt argues the juvenile court's decision to impose such a sentence was instead based upon him being a young Black male who was "being raised by a single mother in a poverty-stricken neighborhood." Hunt claims that there is, in fact, no other "conceivable reason why" the juvenile court issued the decision that it did other than his age, race, and/or gender. Hunt's argument lacks merit. This is because, contrary to Hunt's claim, the record contains overwhelming evidence to support the juvenile court's finding that a discretionary SYO dispositional sentence should be imposed in this case. This includes, just as the juvenile court found, "the seriousness of the multiple crimes, the extensive planning and execution that went into their commitment, the lack of regard for the property of others, and the lack of recognition of the wrongfulness of his acts."

---

6. Hunt claims the stolen firearms were, in fact, inoperable. Hunt does not cite anything within his appellate brief to support this contention. This court's review of the record has also not unearthed anything to indicate the stolen firearms were anything other than fully functional.

{¶ 22} The juvenile court reached this decision after considering the evidence set forth within the record. This evidence is contained within the victims' impact statements, the presentence-investigative report, and Hunt's psychological evaluation. This evidence is also included in Hunt's risk assessment, as well as the extradition documents from Kentucky, all of which are contained within the case file and made part of the record properly before this court on appeal. This evidence, all of which this court has reviewed, plainly establishes that Hunt had been the primary instigator among a group of three other juveniles in their efforts to steal certain firearms from several different federally licensed firearms dealers located in the Clermont County, Ohio area during the early morning hours of August 25, 2024. This evidence also provides strong support for the State's assertion that Hunt's main purpose for committing these offenses was to provide the stolen firearms to known gang members with whom he admittedly associated with as part of the juvenile court's presentence investigation. While Hunt denies being a gang member, whether Hunt is or is not himself a member of a gang is of little to no consequence given the other overwhelming evidence in the record to support the juvenile court's decision.

{¶ 23} What is more, that the juvenile court may have mistakenly referred to the brief statement that the Union Township Police Department detective provided to the court as "testimony" within its dispositional decision does not change the fact that such other overwhelming evidence exists. This is particularly true here when considering the State specifically advised the juvenile court, when asked by the court whether the detective would be testifying or merely providing it with a statement, that it would appreciate it if the court allowed the detective to provide the court with "a statement." To this, the juvenile court responded, "Certainly." Hunt did not object to the detective providing the juvenile court with this statement. Hunt also did not request the juvenile

court to question the detective regarding his statement either before, during, or after the detective provided his statement to the court. This is in addition to Hunt never requesting the juvenile court to place the detective under oath prior to him issuing his statement.

{¶ 24} The juvenile court's mischaracterization of the detective's statement as "testimony" also does not raise an issue with respect to the Confrontation Clauses as found in the Sixth Amendment to the United States Constitution or Article I, Section 10 of the Ohio Constitution. *See State v. Muttart*, 2007-Ohio-5267, ¶ 59 ("[t]he Confrontation Clause applies only to 'testimonial statements'"); *see also State v. Montgomery*, 2016-Ohio-5487, ¶ 87 ("[a] statement is testimonial if it is made with 'a primary purpose of creating an out-of-court substitute for trial testimony'"), quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011). This is because, even if we were to find the detective's statement to be testimonial in nature, Hunt neither objected to the detective providing the juvenile court with this statement, nor did Hunt ever requested permission from the juvenile court to question the detective about his statement. Hunt also never requested the juvenile court to place the detective under oath. This is significant given the "well-established principle that Confrontation Clause rights, like other constitutional rights, can be waived." *State v. Pasqualone*, 2009-Ohio-315, ¶ 14. Such is the case here. To the extent Hunt claims otherwise, Hunt's argument lacks merit.

{¶ 25} In so holding, we note that, while not particularly clear, Hunt seems to be arguing that a juvenile court must hold an evidentiary hearing before it may impose a discretionary SYO dispositional sentence upon a child adjudicated delinquent under R.C. 2152.13(D)(2)(a)(i). This is because, although not expressly stated, Hunt suggests the only "evidence" that the juvenile court may consider when determining whether to impose such a sentence is through sworn witness testimony and properly admitted exhibits presented to the court. However, nothing within the plain language outlined in R.C.

2152.13(D)(2)(a)(i) requires the juvenile court to hold an evidentiary hearing before it may impose a discretionary SYO dispositional sentence upon a child adjudicated delinquent. Rather, as noted above, that statute merely requires the juvenile court to make a finding on the record that, "given the nature and circumstances of the violation and the history of the child, the length of time, level of security, and types of programming and resources available in the juvenile system," merely imposing a traditional juvenile disposition upon the child would be inadequate to provide the juvenile court with a reasonable expectation that the overriding purposes for juvenile dispositions outlined in R.C. 2152.01(A) would be met.

{¶ 26} Consequently, while Hunt seems to be arguing that a juvenile court must hold an evidentiary hearing before it may impose a discretionary SYO dispositional sentence upon a child adjudicated delinquent under R.C. 2152.13(D)(2)(a)(i), we will not read such a requirement into the statute where none otherwise exists. This is because, as it is now well established, "[w]e must give effect to the words used in the statute and may not add to nor delete from the words chosen by the General Assembly." *In re Application of Dayton Power & Light Co.*, 2025-Ohio-2953, ¶ 50; *State v. Johnson*, 2024-Ohio-134, ¶ 23 ("[w]ords may not be added or deleted [from a statute] according to judicial whimsy"). Statutes, where clear and unambiguous, must instead be applied as written. *In re N.M.P.*, 2020-Ohio-1458, ¶ 22. This is the case with respect to R.C. 2152.13(D)(2)(a)(i). Therefore, because the juvenile court did not err by finding that a discretionary SYO dispositional sentence should be imposed upon Hunt in this case, Hunt's first assignment of error lacks merit and is overruled.

**Hunt's Second Assignment of Error**

{¶ 27} THE JUVENILE COURT ERRED WHEN IT SENTENCED T.H. TO THE OHIO DEPARTMENT OF YOUTH SERVICES FOR ONE YEAR OR UP UNTIL THE AGE

OF 21. T.H. HAD NEVER BEEN OFFERED REHABILITATIVE SERVICES.

{¶ 28} In his second assignment of error, Hunt argues the juvenile court erred by imposing a discretionary SYO dispositional sentence that included him serving a minimum one-year commitment to the DYS. We again disagree.

{¶ 29} It is well established that juvenile dispositions do not exist merely to punish the adjudicated child delinquent and to prevent future crime. *In re T.H.*, 2007-Ohio-352, ¶ 13 (12th Dist.). Rather, as noted above, the overriding purposes behind juvenile dispositions are to "provide for the care, protection, and mental and physical development of children." R.C. 2152.01(A). Those overriding purposes are also to "protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender." *Id.* These overriding purposes are to be "achieved by a system of graduated sanctions and services." *Id.* Therefore, juvenile dispositions are to be "reasonably calculated to achieve" the overriding purposes set forth above, "commensurate with and not demeaning to the seriousness of the delinquent child's conduct and its impact on the victim, and consistent with dispositions for similar acts committed by similar delinquent children." R.C. 2152.01(B).

{¶ 30} The juvenile court must do this without basing its dispositional decision on "the race, ethnic background, gender, or religion of the delinquent child" at issue. *Id.* The juvenile court must instead "evaluate the particular facts and circumstances of each case and discern the particular problems and needs of the juvenile appearing before them." *In re D.R.*, 2022-Ohio-4493, ¶ 15. "To do this, the juvenile court must consider not only the delinquent act(s) that the juvenile committed, but also the overall conduct and behavior of the juvenile, the juvenile's history, the remorse shown by the juvenile, and other societal factors." *In re T.I.*, 2024-Ohio-292, ¶ 26 (12th Dist.). A juvenile court's disposition of a child adjudicated delinquent is a matter within the court's discretion. *In re E.T.H.*, 2019-

Ohio-79, ¶ 26 (12th Dist.). Therefore, just as when we review whether a juvenile court erred by finding a discretionary SYO dispositional sentence should be imposed, "this court will not disturb a juvenile court's decision regarding a juvenile disposition absent an abuse of discretion." *State v. K.W.*, 2016-Ohio-7365, ¶ 33 (12th Dist.), citing *In re D.S.*, 2006-Ohio-5851, ¶ 6.

{¶ 31} Hunt argues the juvenile court erred by imposing a discretionary SYO dispositional sentence that required him to serve a minimum one-year commitment to the DYS. Hunt argues the juvenile court should have instead imposed a disposition that sentenced him to the time he had already served while in the juvenile detention center and other unspecified "rehabilitative services." Hunt claims the juvenile court's decision to impose a more stringent disposition upon him in this case demonstrates a "clear" abuse of the juvenile court's discretion. This is because, according to Hunt, the juvenile court's decision committing him to a minimum one-year period with the DYS proves the court "gave up" on him and destined him to a life of crime by ordering him, a young Black male, into "the school to prison pipeline" where he will do nothing more than "learn how to be a better juvenile delinquent." However, although we can understand Hunt not wanting to serve any additional time with the DYS or ODRC other than what he has already served in the juvenile detention center, "some circumstances justify substantial confinement in order to fulfill the purposes of protecting public safety and holding the offender accountable." *In re T.H.*, 2007-Ohio-352, at ¶ 13.

{¶ 32} Upon a full and thorough review of the record, we find no error in the juvenile court's decision finding the circumstances of this case justified Hunt being committed to the DYS for a minimum period of one year. This is particularly true here when considering the overwhelming evidence set forth within the record that Hunt took part in the planning and commission of, among others, six first- and second-degree felony offenses. This

- 16 -

included four counts of first-degree felony grand theft of a firearm from a federally licensed firearms dealer in violation of R.C. 2913.02(A)(1)/(B)(4). That Hunt did not have any prior contact with the juvenile justice system does not change this fact. *See, e.g., State v. K.W.*, 2016-Ohio-7365, at ¶ 36 (juvenile court did not err by committing child adjudicated delinquent to DYS for a minimum of two years even though the child "did not have an extensive prior juvenile record" where the child engaged in conduct that would have constituted several first-, second-, and fourth-degree felonies if committed by an adult).

{¶ 33} To hold otherwise would provide juveniles a free pass when confronted with the consequences of their criminal conduct simply because it was their first foray into criminality. It remains commonsensical that, generally, the preference for rehabilitation is to be "achieved by a system of graduated sanctions and services" under R.C. 2152.01(A). However, even when confronted with such a preference for rehabilitation, the specific facts and circumstances presented must be evaluated and weighed by the juvenile court on a case-by-case basis. R.C. 2152.01(A) is not stated in restrictive terms. And, despite Hunt's claims to the contrary, nothing within the language outlined in R.C. 2152.01(A) can be interpreted as tying the hands of the juvenile court from exercising its discretion when formulating a disposition uniquely tailored to each adjudicated child delinquent who may appear before it. To the extent Hunt claims otherwise, such an argument again lacks merit.

{¶ 34} In reaching this decision, this court would be remiss were we not to specifically address Hunt's claim that there is no other "conceivable reason why" the juvenile court sentenced him to a minimum one-year commitment with DYS other than him being a young Black male who was "being raised by a single mother in a poverty-stricken neighborhood." This is because, as noted above, a juvenile court must not base its dispositional decision on "the race, ethnic background, gender, or religion of the

delinquent child" at issue. R.C. 2152.01(B). But, despite Hunt's recitation of certain statistics setting forth the racial demographic of those juveniles currently committed to the DYS, Hunt has not pointed to anything within the record to indicate the juvenile court based its dispositional decision on his being young, Black, or male, either when viewed individually or collectively. Therefore, given the lack of any supporting evidence in the record, Hunt's allegations of bias and prejudice are based on nothing more than innuendo and speculation. "Allegations that are based solely on innuendo and speculation are insufficient to establish bias or prejudice." *In re Disqualification of Pokorny*, 2013-Ohio-915, ¶ 6.

{¶ 35} Rather than Hunt's age, race, and/or gender, the record instead indicates the juvenile court issued its dispositional decision based on the overwhelming evidence that established Hunt as the primary instigator among a group of three other juveniles in their efforts to steal certain firearms from several different federally licensed firearms dealers located in the Clermont County, Ohio area during the early morning hours of August 25, 2024. This ultimately resulted in Hunt entering a plea of admission to all 17 criminal offenses that had been levied against him. This included six first- and second-degree felonies, serious criminal conduct that the juvenile court found justified committing Hunt to the DYS for a minimum one-year period. This was not an error. Hunt's insinuation that the juvenile court's decision was based upon his age, race, and/or gender is misguided when considering the absence of anything within the record that would support such an incendiary allegation against the juvenile court judge. We caution Hunt, and his counsel, to avoid making such accusations of bias and prejudice with unsupported supposition.

## Conclusion

{¶ 36} The juvenile court did not err by finding Hunt a SYO. The juvenile court also

did not err by imposing a discretionary SYO dispositional sentence that required Hunt to serve a minimum one-year commitment to the DYS. Therefore, finding no error, Hunt's appeal from the juvenile court's decision finding Hunt a SYO and imposing a discretionary SYO dispositional sentence that required him to serve a minimum one-year commitment to the DYS is denied.

{¶ 37} Judgment affirmed.

M. POWELL and SIEBERT, JJ., concur.

---

# J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Clermont County Court of Common Pleas, Juvenile Division, for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robin N. Piper, Presiding Judge

/s/ Mike Powell, Judge

/s/ Melena S. Siebert, Judge